393 A.2d 447

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Dennis WHITE.**

Supreme Court of Pennsylvania.

Argued April 21, 1978.

Decided Oct. 27, 1978.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Maxine Stotland, Asst. Dist. Atty., Philadelphia, for appellant.

Marilyn J. Gelb, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

Dennis White was convicted in a jury trial of murder of the third degree for the shooting death of one Thomas Sumpter. Post-trial motions were filed and argued before the trial court, and on July 13, 1976, White's motion for a new trial was granted on the ground that a testimonial reference to White's decision to remain silent after having given a partial oral statement to the police constituted reversible error.[1] From the lower court's order granting a new trial, the Commonwealth has taken this appeal.[2]

As with a denial of a motion for new trial, so with the grant of such a motion, our review is limited to ascertaining whether the lower court abused its discretion or committed an error of law. *Commonwealth v. Liddick,* 471 Pa. 523, 370 A.2d 729 (1977); *Commonwealth v. Morales,* 458 Pa. 18, 326 A.2d 331 (1974); *Commonwealth v. Jones,* 455 Pa. 488, 317 A.2d 233 (1974). In the case at bar, we find that it did neither, and accordingly we affirm.

The record shows that the killing of Thomas Sumpter occurred inside the Matador Inn in Philadelphia at approximately midnight on May 17, 1975. Shortly before the kill-

---

1. The trial court's order and opinion read as follows:
   "STOUT, J.
     "A new trial is granted.
     "Testimony of the interviewing detective that the statement was ended at the wish of the defendant who said he wasn't going to read or sign it, and that he said he had already done enough to hurt himself and wasn't going to say any more, constitutes reversible error. (N.T., Vol. 3, p. 78), *Commonwealth v. Hiademan,* 449 Pa. 367, 296 A.2d 765 (1972), *Commonwealth v. Gochenaur,* 234 Pa.Super. 588, 341 A.2d 163 (1975)."

2. The established rule in this Commonwealth is that the prosecution may appeal an order granting a motion for new trial only where the question involved is one of law. See, *e. g., Commonwealth v. Liddick,* 471 Pa. 523, 370 A.2d 729 (1977); *Commonwealth v. Jones,* 453 Pa. 8, 306 A.2d 900 (1973); *Commonwealth v. Blevins,* 453 Pa. 481, 309 A.2d 421 (1973); *Commonwealth v. Melton,* 402 Pa. 628, 168 A.2d 328 (1961). The question in the case at bar is one of law, *viz.,* whether the defendant's Fifth Amendment right against self-incrimination was violated.

ing, White had been involved in an incident involving the shooting of one Martin Sanders outside the Inn. White was arrested in the area of the Inn and taken to the Police Administration Building. He was there interviewed for slightly over an hour by a detective, D. Bennett. There, White waived his constitutional rights and, in the course of an interrogation conducted by Detective Bennett, gave an arguably exculpatory statement. Bennett was called as a Commonwealth witness at trial. He testified that White voluntarily waived his constitutional right to remain silent, that he gave a three-page statement, and that White refused to read or sign the statement. The examination of the witness then continued as follows:

"Q. Would you tell us what happened at that point?

A. I finished page three, a question, the defendant answered the question and at that time the defendant said that, '*He had already done enough to hurt himself, he wasn't going to say any more.*'

DEFENSE COUNSEL: I would move for a mistrial.

THE COURT: Overruled.

Q. All right, and at that point the defendant indicated he did not want to speak to you any further, what occurred?

A. The statement was stopped.

DEFENSE COUNSEL: May I renew my motion?

THE COURT: Overruled." (Emphasis added.) (Record at 13a–14a.)

The Court was not asked to nor did it give a cautionary instruction. Following the above exchange, the witness recounted White's oral statement up to the point it was terminated.[3]

---

**3.** White's oral statement, as reported by Detective Bennett, was as follows:

"BENNETT: Began with the question, 'What do you know about this incident?' Answer: Look, man all I know is that I went to this bar at Gratz and Cayuga to see a girl named Karen Young. I was at the same bar last Tuesday night and some guy threatened me and I called my dad to come and get me. My dad then took me to Chuck's Bar up on Broad and Erie. That's where I be at lot of

We have recognized that testimonial reference to an accused's silence at the time of arrest is violative of an accused's right against self-incrimination. *Commonwealth v. Haideman*, 449 Pa. 367, 296 A.2d 765 (1972). In *Haideman* the Commonwealth in its case-in-chief introduced the testimony of the arresting officer that after warning the defendant of his constitutional rights "[h]e didn't say nothing; he calmed down and he shut up." The Court, citing the Seventh Circuit in *United States v. Kroslack*, 426 F.2d 1129 (7th Cir. 1970), reasoned: "The testimony elicited here could well have led the jury to infer guilt from defendant's refusal to make the statement. We think exercise of a constitutional privilege should not incur this penalty." 449 Pa. at 371, 296 A.2d at 767.

In the case at bar, the reference to defendant's silence did not pertain to the time of arrest, but it was at least as harmful as the reference condemned in *Haideman*. Here, the interviewing officer's testimony referred not only to the defendant's refusal to say more, but also to the reason for

time. Anyway when I went there tonight I saw this guy Anthony that I know from Rowan Street and he started arguing about something I said, but I don't know what I said that offended him. Then he reached back like this (Indicated with right hand reaching back towards right rear pocket), I don't know if he was going for a roscoe [a gun] or not. I pulled mine and I fired two or three times. Karen told me to run. I went to Karen's aunt's house at 1952 Rowan Street. Then Karen called her aunt on the phone and told her that the guy in the bar had been shot, her aunt told me and I left. Right after I had left the house the cops grabbed me. Question: What is the name of the guy that you shot? Answer: I only know him by Anthony, he lives on Rowan between Wayne and Germantown I think. I used to go with a girl on the same block. Question: Where is the gun that you had? Answer: I don't know, I threw it when I ran out the bar. Question: How long were you in the bar before the shooting? Answer: I'll say about fifteen minutes. Question: Was the guy that you shot the same guy that threatened you Tuesday night? Answer: No man—I just talked to Anthony Thursday and everything was all right. Question: What caused the argument between you and the guy tonight? Answer: I don't know he said something about something that I said offending him. Question: Were you talking to Karen Young outside of the bar before the shooting? Answer: Yeah, I had gone in the bar, then I went outside and talked to Karen and to some other people and then I want back into the bar. That was the end of the statement."

the refusal. Up to the point when White refused to "say any more" his statement regarding the shooting of Sumpter inside the Inn had not been clearly inculpatory. Rather, it was a confusing statement purporting to describe a shooting incident, but from which it is difficult to discern exactly what White was describing. At some points it appears that White is referring to the incident inside of the Inn, but at other times, to the shooting outside the tavern. The defendant's statement that "he had already done enough to hurt himself" could therefore quite easily have enabled the jury to draw an inference of guilt from that which White left unsaid in talking to the detective.

The Commonwealth does not argue that the admission of the challenged testimony was harmless error; it rather asserts that there was no error at all. Since we reject that argument, the question becomes whether the error was harmless. We think that the lower court could properly have concluded, as apparently it did, that the error was not harmless. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Commonwealth v. Pearson*, 427 Pa. 45, 233 A.2d 552 (1967); *Commonwealth v. Hale*, 467 Pa. 293, 356 A.2d 756 (1976). Compare *Commonwealth v. Maloney*, 469 Pa. 342, 348–49, 365 A.2d 1237, 1240–41 (1976).

As stated at the outset, we find that the court below committed no error of law or abuse of discretion. The order of the trial court granting a new trial is therefore affirmed.