445 A.2d 113

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Carl A. COMBS.**

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Stanley JENKINS.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed April 30, 1982.

---

Victor M. Fortuno, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Neil F. Jodelson, Philadelphia, for Combs, appellee.

John W. Packel, Chief Appeals, Assistant Public Defender, Philadelphia, for Jenkins, appellee.

Before CERCONE, President Judge, WICKERSHAM and VAN der VOORT, JJ.

CERCONE, President Judge:

Appellant, the Commonwealth of Pennsylvania,[1] takes this appeal from the order of the trial court granting defendant-appellees', Carl Angelo Combs and Stanley Jenkins, motions

1. Where the question is purely one of law, the Commonwealth may appeal from an adverse ruling in a criminal case; thus, the Commonwealth may appeal from the decision of a trial court arresting judgment after verdict in a criminal case. *Commonwealth v. Glendening*, 262 Pa.Superior Ct. 357, 396 A.2d 793 (1979).

in arrest of judgment. For the reasons set forth below, we find that the lower court erred in arresting judgment and we hereby reverse that order and remand for sentencing.

On February 17, 1978, the lower court judge, sitting without a jury, convicted both defendant-appellees on charges of simple assault, criminal conspiracy, unlawful restraint, and rape. Following the trial, as indicated, appellees filed motions in arrest of judgment which were granted by the court. In granting these post-verdict motions, the court said, "In the within matter, the Court found totally incredible the testimony of Debbie Carter, the only prosecution witness, and therefore, the Commonwealth's evidence was insufficient as a matter of law to establish the necessary elements of each of the crimes charged."

The scope of review of the appellate courts when reviewing the issue of sufficiency of the evidence is to examine all of the evidence and all the reasonable inferences arising therefrom in the light most favorable to the verdict winner; the effect of a motion in arrest of judgment is to admit all the facts which the prosecution's evidence tends to prove. *Commonwealth v. Davis*, 477 Pa. 197, 383 A.2d 891 (1978); *Commonwealth v. Meadows*, 471 Pa. 201, 369 A.2d 1266 (1977); *Commonwealth v. Winebrenner*, 439 Pa. 73, 265 A.2d 108 (1970). As the Supreme Court has said:

"In order for a trial court to properly grant a criminal defendant's motion in arrest of judgment on the ground of insufficient evidence, 'it must be determined that accepting all of the evidence and all reasonable inferences therefrom, upon which it believed [the verdict could properly have been based], it would be nonetheless insufficient in law to find beyond a reasonable doubt that the [defendant] is guilty of the crime charged.'"

*Commonwealth v. Meadows*, 471 Pa. at 205–206, 369 A.2d at 1268, quoting from *Commonwealth v. Blevins*, 453 Pa. 481, 483, 309 A.2d 421, 422 (1973).

This Court has reviewed the entire record in the instant case and, after applying the above-cited rules, we find that the evidence presented by the Commonwealth was sufficient

to support the guilty verdicts rendered. At the trial, only two witnesses testified—the complainant, Debbie Carter, and appellee, Carl Combs. The complainant, who was fifteen years old at the time of the incident, testified that she had known the appellees "for years" and that on November 14, 1977, at approximately 6:30 p. m., she was at her girlfriend's house when she saw appellee Jenkins walking down the street. She spoke to Jenkins for a while and he invited Debbie to accompany him to the local bar. At the bar, they met appellee Combs, who was twenty-two years old at the time. The three of them remained at the bar for about half an hour, during which time appellees drank some beer. Debbie had nothing to drink. Jenkins then asked Debbie if she would accompany appellees to a nearby discotheque, and Debbie agreed to do so. As before, Debbie had nothing to drink. The three of them remained at the discotheque for approximately half an hour, after which time they walked to the neighborhood playground, at the suggestion of appellee Jenkins.

On the premises of the playground was a building; appellee Jenkins had the keys to the building and opened the door. According to Debbie's testimony, she had been in this building during the summer to play ping-pong and similar games, so she was familiar with the place. On the evening in question, however, Debbie and the two appellees went inside the building to a large room containing a desk, a couch and a chair. Once inside, Debbie sat in the chair, Combs, on the desk, and Jenkins chose the couch. The three of them sat there for a time, talking, while at the same time Debbie doodled with a crayon on a piece of paper. Debbie admitted at trial that her mother had told Debbie to stay away from Jenkins, but Debbie liked to talk to Jenkins (and with Combs), which is why she went with Jenkins despite her mother's orders. Debbie further testified that when she arrived at the playground, she called her mother and told her mother that she was still at her girlfriend's house and that she would be home soon. Debbie then said that after talking with appellees for a while appellee Jenkins told

Debbie that "he always wanted [Debbie]." A short time after Jenkins made his remark, Debbie said that she was ready to leave but Jenkins told her that the door was locked, and he pushed the couch in front of the door. Jenkins then grabbed Debbie and pinned her arms behind her in a "full Nelson." Debbie testified that she attempted to break Jenkins' grip but she could not and that while Jenkins held her, Combs stripped Debbie of her slacks and underpants. Jenkins then forced Debbie to the couch and raped her; after Jenkins stood up, Combs raped Debbie.

After the rapes, Debbie, who was crying, went into the bathroom to wash her hands and to get dressed. When she came out, the sofa was moved back into its place and Debbie tried to open the door but it was locked. Jenkins opened the door and Debbie was allowed to leave. Debbie testified that when she returned home she did not tell her mother about the rapes, but, rather, told her mother that she was crying because she had been smoking marijuana. Debbie said that she did not tell her mother the truth because she was afraid that her mother might stab one of the men, instead of going to the police to report the incident. About three days after the attack, Debbie told her girlfriend's mother of the incident, and this woman called Debbie's mother and told her.

At trial, appellees did not deny that they had intercourse with Debbie on the night in question but appellees claimed that Debbie consented and that no rape occurred. Obviously, credibility was a key factor here and the trial judge, sitting without a jury, in handing down the verdict credited Debbie Carter's testimony over that of Carl Combs, saying when he handed down the verdict:

THE COURT: Mr. Combs and Mr. Jenkins, this Court has carefully considered the type and quality of the evidence presented in this case.

This jury [sic] has brought to the jury box all of its experience in human life, so that when it heard the testimony presented, it applied those experiences in order to resolve issues of inconsistencies.

This jury [sic], having completed that process, concludes that the Commonwealth has established the necessary elements of the crimes for which each of you are charged, and accordingly find you, Carl Combs, and you, Stanley Jenkins, guilty of the charges lodged.

Three months after handing down his verdicts in this case, the trial judge reassessed the credibility question and reversed his position, now finding the testimony of Debbie Carter to lack credibility because she admitted lying to her mother about where she was going on the evening in question and because she admitted that she willingly accompanied the appellees throughout the evening. Now finding the testimony of the Commonwealth's sole witness to lack credibility, the trial judge sustained the motion in arrest of judgment ostensibly on the basis of insufficiency of the evidence. This was error.

In *Commonwealth v. Meadows*, 471 Pa. at 205 n.5, 369 A.2d at 1268, n.5, the Supreme Court citing Pa.R.Crim.P. 1102(a),[2] wrote, *"[T]he trial judge's authority over the verdict [in a non-jury case] . . . is no greater than the authority of a trial judge over a jury verdict."* (Emphasis added.) In *Meadows*, as in the case *sub judice*, the trial judge, sitting without a jury, found the accused guilty as charged. Subsequently, however, upon reviewing the accused's motion in arrest of judgment the trial court re-evaluated the credibility of the Commonwealth's chief witness and of the weight to be assigned thereto. The Supreme Court held that this re-evaluation of credibility was not in keeping with the standards articulated for considering a motion in arrest of judgment, and for this reason the Court found the trial court to be in error for arresting judgment as it did. The Supreme Court was faced with the same issue in *Commonwealth v. Davis, supra*, and once again the Court held that the trial court erred in granting a motion in arrest of judgment where the trial court's ruling on this motion

2. Pa.R.Crim.P. 1102(a) provides: "When a defendant waives a jury trial, the trial judge shall determine all questions of law and fact and render a verdict which shall have the same force and effect as a verdict of a jury."

meant a re-evaluation of the credibility of a key witness for the Commonwealth.

In this Court's opinion in *Commonwealth v. Nelson*, 245 Pa.Superior Ct. 33, 369 A.2d 279 (1976), *affirmed*, 476 Pa. 269, 382 A.2d 715 (1977) (remanded on other grounds), Judge Spaeth in his concurring opinion set forth the problem quite clearly, saying:

"Anyone who has been a trial judge will recognize what happened here. The judge had a difficult decision to make. He made it—he found appellant guilty—but then he started to worry that perhaps he had made a mistake. "We have all experienced such worry. It can be very painful. It does not, however, justify a change of mind. Had the judge been sitting with a jury, and had one of the jurors come to him after the trial and expressed the wish to change his verdict, the judge would have told him that he could not. Here, the judge was the jury. He should have said to himself what he would have said to the juror. "It is important to note a distinction in the cases. If a judge sitting without a jury indicates by something he says on the record that when he found the defendant guilty, he had a reasonable doubt, we will—must—reverse. *Commonwealth v. Oglesby*, 438 Pa. 91, 94, 263 A.2d 419, 420–421 (1970), *Commonwealth v. Molina*, 236 Pa.Super. 598, 601, 346 A.2d 351, 353 (1975) (Dissenting Opinion by Spaeth, J. in which Hoffman and Cercone, JJ., joined). The reason is that the record discloses error of law; the case is the same, in substance, as though the judge had been sitting with a jury and had failed to instruct the jury that it could not find the defendant guilty unless satisfied beyond a reasonable doubt. This is not such a case. There is nothing on the record to support the conclusion that when the judge found appellant guilty, he had a reasonable doubt. It only appears that the judge had some doubt later. Thus, no error of law appears. In these circumstances both the trial judge and we are without power to change the verdict." 245 Pa.Superior Ct. at 38–39, 369 A.2d 279.

The judge in the instant case made no bones about the fact that he was reassessing the credibility of the Commonwealth's witness when the judge ruled upon defendant-appellees' motion in arrest of judgment. We find the trial judge to be in error and we hereby reverse his decision arresting judgment and reinstate the guilty verdicts.

Reversed and remanded for resentencing.