479 A.2d 491

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James G. MONARCH.**

Superior Court of Pennsylvania.

Submitted Jan. 24, 1984.

Filed June 1, 1984.

Reargument Denied Aug. 14, 1984.

Petition for Allowance of Appeal Granted Feb. 27, 1985.

William G. Martin, Jr., Assistant District Attorney, Franklin, for Commonwealth, appellant.

Oliver J. Lobaugh, Seneca, for appellee.

Before WIEAND, TAMILIA and POPOVICH, JJ.

POPOVICH, Judge:

█ This is an appeal by the Commonwealth from the Order of the Court of Common Pleas of Venango County (per President Judge William E. Breene) granting appellee's, James G. Monarch's, Motion for a New Trial.[1] We reverse.

█ At the outset, it requires mentioning that the Commonwealth assails the propriety of the post-trial motion judge's ruling, which is, in essence, a reversal of his earlier decision denying counsel's motion to suppress evidence—a viewing by the police of appellee's alleged intoxicated condition—secured during the effectuation of a warrantless arrest of the appellee for driving while intoxicated. 75 Pa.C. S.A. § 3731. Therefore, inasmuch as the issue posed concerns a pure question of law, the matter is properly before us. *Commonwealth v. Liddick,* 471 Pa. 523, 370 A.2d 729 (1977); *Commonwealth v. Holderman,* 284 Pa.Super. 161, 425 A.2d 752 (1981); *Commonwealth v. Baldwin,* 253 Pa. Super. 1, 384 A.2d 945 (1978).

█ Our review in this area "is limited to ascertaining whether the lower court abused its discretion or committed an error of law." (Citations omitted) *Commonwealth v. White,* 482 Pa. 197, 199, 393 A.2d 447, 449 (1978). In doing so, we will "analyze [ ] all the facts and circumstances[.]" *Commonwealth v. Coley,* 466 Pa. 53, 65, 351 A.2d 617, 623 (1976).

---

**1.** Since there is no evidence of record to indicate that the appellee has filed a cross-appeal from that portion of the post-trial court's Order denying his Motion in Arrest of Judgment, which is an appealable interlocutory order, *see* Pa.R.Crim.P. 311(a)(5); *Commonwealth v. Chenet,* 473 Pa. 181, 373 A.2d 1107 (1977), we need not examine that aspect of the ruling.

In compliance with the aforesaid, we start by examining the evidence adduced at the October 5, 1982 suppression hearing; to-wit: At 8:04 on the 5th of March, 1982, Borough of Sugarcreek Patrolman Hoover and Captain Baker received a radio bulletin of a hit-and-run accident on Front Street. Within 11 minutes the police had arrived on the scene. Captain Baker began questioning the owner (a Barry Shaw) of the damaged vehicle, while Patrolman Hoover made his way to a second vehicle, situated about 50 yards down the road, with its 4-way flashers operating. He was met by a Mr. Charles Keas, who was standing near the vehicle owned by a Mr. Seigworth and later determined not to be involved in the accident. The patrolman recalled:

> Mr. Keas advised me at that time, he pointed and he said, "That's the vehicle there that hit the car," and he then told me, "His name is Monarch," .... (RR. 13A)

More particularly, Mr. Keas, having heard the accident and seeing "Monarch get out of his vehicle, f[a]ll down and [then go] into the house" at 162 Front Street (RR. 21A), was pointing specifically at the vehicle parked at the aforecited address.

As the patrolman made his way down the driveway, he observed a blue Toyota "with fresh damage ... on the passenger side of the rear door. The paint was still chipped and metal was still shining underneath." (RR. 14A) Mr. Shaw's vehicle was struck in the left rear and all along the same side. (RR. 26A) Then, Patrolman Hoover was approached by Mrs. Monarch, who had seen him from inside of the house and came out to ask if there was any problem. The patrolman told Mrs. Monarch that her husband had been involved in a hit-and-run accident and that he wanted to speak with him. Mrs. Monarch responded that she had given her husband a sedative and that he was "in bed sleeping ... because he was shook up about the accident ...." (RR. 14A) Nonetheless, the patrolman stated he "wanted to speak to her husband and she said, 'O.K.'" (RR. 22A) Moreover, on this question of consent, defense

counsel engaged in the following exchange with the patrolman; *viz.:*

Q Did she tell you to come into the house?

A Yes, sir.

Q What did she say?

A She said, "O.K., come on," and we began walking up the driveway onto the front porch. (RR. 22A)

As soon as the patrolman entered the hallway, he observed Mr. Monarch, at a distance of approximately 3 feet:

... leaning against the wall because he was unable to stand ereck. [sic] His clothes were disarranged, there was a strong odor of alcohol about his person. His eyes were bloodshot and he had slurred speech. (RR. 15A)

Immediately thereafter, Mr. Monarch was advised of his *Miranda* rights and that he was under arrest for driving under the influence of alcohol. At this point, appellee requested if he could use the phone and if the patrolman would step outside during the call. The patrolman complied. By this time, Captain Baker had arrived. When Mrs. Monarch asked if one of the officers would speak to the party on the other end of the line, Baker did so. Following the conversation, the police were asked again to step outside while a second call was made. The officers agreed. However, after the officers observed the appellee retrieve a beer from their vantage point on the porch, Patrolman Hoover walked back into the hallway and removed the beer from appellee's hand because he "didn't want it to interfer [sic] with the breathalizer test." (RR. 18A)

With the conclusion of the phone conversation, appellee was transported to the police station and informed of the consequences if he refused to take the breathalizer test. Appellee refused and, thereafter, was driven back to his residence.

Captain Baker corroborated the patrolman's accounting regarding appellee's intoxication. (RR. 28A) As for Mrs. Monarch, her version deviates from that of the patrolman on the issue of consensual entry. Specifically, she testified

to asking the patrolman to "wait outside" while she went into the house to see if she could get her husband. According to Mrs. Monarch, the patrolman did not do so. Rather, as she "began to enter [her] house . . . he followed [her] in." (RR. 34A) She also stated that the patrolman could not have seen her husband if he had remained on the porch. Entry was required.

The suppression court, after listening to all of the testimony, denied appellee's motion to suppress evidence of his insobriety. The court found as a fact that, "[a]t the very least, Patrolman Hoover had Mrs. Monarch's permission to stand on the defendant's porch." And, "[f]rom the porch, Patrolman Hoover could see defendant standing in his living room . . . intoxicated." Thus, the court concluded as a matter of law that, "[s]ince Patrolman Hoover was on the defendant's porch with Mrs. Monarch's permission, everything he observed prior to defendant's arrest shall not be suppressed." (Suppression Court's Opinion at 2 & 5) We find that the record supports such a conclusion. *Compare Commonwealth v. Hamlin*, 302 Pa.Super. 86, 448 A.2d 538 (1982), aff'd 503 Pa. 210, 469 A.2d 137 (1983).

As is relevant to a determination of the issue at bar, i.e., whether the trial court committed an error of law in holding that the Commonwealth did not establish *at trial* that Patrolman Hoover had Mrs. Monarch's permission to be in the position he was in when he observed the appellee in an allegedly intoxicated state, we need only reconstruct the testimony of Patrolman Hoover as proffered at the jury trial.[2]

---

**2.** The strongest evidence of appellee's involvement in the accident came from Messrs. Seigworth and Keas. Seigworth was driving to a basketball game and saw an oncoming vehicle in the opposite lane of traffic. There was a parked vehicle in the opposite lane and Seigworth thought the moving vehicle "was going to stop behind the parked cars [but] it just went sideways in front of [him] and [it] come [sic] to a stop in front of [him]." (N.T. 10/8/82 at 8) Seigworth noticed that the oncoming vehicle did not stop once it "got into the parked cars[; rather,] it went sideways across the road in front of" him. *Id.* Seigworth identified the driver of the vehicle as the appellee-Monarch.

Patrolman Hoover's recollection at trial was consistent with his sworn testimony at the suppression, except that the consensual nature of his entry into the Monarch's residence was *not discussed,* as had occurred at the pre-trial proceeding. On the subject of entry and the condition in which he observed the appellee, he remarked:

A  I was approached by Mrs. Monarch who was questioning—wanting to know what was going on.  I advised her that her husband was—had been involved in a hit and run accident, that I had to speak to him.

Q  And so as the result of the conversation with her, what did you do then?

A  We then proceeded to the front door where he was.  I went in and I viewed Mr. Monarch standing there in the entrance hall

*　　*　　*　　*　　*　　*

Q  Did you have any conversation with him after you went in?

A  Yes, sir.  As I observed Mr. Monarch, I advised him of his Miranda warnings.

Q  And for what reason did you do that?

A  Because I was placing him under arrest for driving under the influence of alcohol.

Q  What observation did you make of him that led you to that conclusion?

A  He had to lean against the wall to maintain his balance, slurred speech, bloodshot eyes, disarranged clothes, strong odor of alcoholic beverages on his person and about the room.

(RR. 72A & 73A)

Additionally, Mrs. Monarch's version of what transpired on the evening in question, as is germane to the case *sub judice,* mirrored her suppression testimony.  For example,

As for Keas, who lived four houses away from the appellee, he testified to having heard the vehicles collide and to observing the appellee "stagger[ing]" "[w]hen he [appellee] come [sic] around the car[ ]" before making it into his house. *Id.* at 20, 21 & 22.

she steadfastly maintained that Patrolman Hoover was asked to "please wait" out on the porch while she tried to get her husband up. But, despite her request, when she opened the door, the patrolman followed her into the house. (RR. 94A)

At the completion of the defense's case, the jury was charged and returned a verdict of guilty. Thereafter, post-verdict motions filed by the appellee questioned the sufficiency of the evidence and claimed that the trial court had erred in not suppressing the officers' testimony on the question of intoxication on the ground that it was the product of an "illegal[,] ... warrantless entry of Defendant's residence not justifiable" under any legal theory.

At the post-trial stage, the court *re-examined* its suppression ruling, and, in doing so, wrote:

In refusing the defendant's motion to suppress, we made a determination that Patrolman Hoover had probable cause to make the arrest. This determination was based upon two mutually dependant [sic] findings: (i) that Patrolman Hoover had learned from Charles Keays [sic] that the defendant had been involved in an automobile accident, and (ii) that Patrolman Hoover had observed the defendant in an intoxicated condition while standing on the defendant's porch with the permission of the defendant's wife. Both findings were necessary to establish the existence of probable cause.

At trial, Patrolman Hoover's version of what had happened on March 5, 1982 differed from the version he provided at the suppression hearing. At trial, Hoover testified that he first observed the defendant *after* entering the defendant's home. It is clear to us that Hoover did not have permission or a right to be where he was when he made this crucial observation. Evidence acquired by a police officer while trespassing on the property of a defendant must be suppressed. *Commonwealth v. Eshelman*, 477 Pa. 93, 383 A.2d 838 (1978). *Had Patrolman Hoover testified in a similar manner at the*

*suppression hearing, the motion to suppress would have been granted.*

For the above reasons, the defendant's motion for a new trial is granted. (Emphasis added in part) (Trial Court Opinion at 2–3)

We disagree with the trial court's determination, not only as to its recounting of the facts, but also with the legal conclusion that it was encumbent upon the Commonwealth to reestablish at trial the consensual nature of Patrolman Hoover's presence at the Monarch's home.

In *Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971) our Supreme Court, in a plurality opinion, awarded a new trial for a lottery conviction on the ground that the warranted search of the accused's home was illegally executed in that the occupant was not first afforded the opportunity to surrender his premises voluntarily. Also, and more importantly, the *DeMichel* Court made certain observations that are relevant to the disposition of the case at bar by disapproving the trial court's rationale for arresting judgment.

To explicate, it seems that two members of the raiding party (Corporal Frank Hall and Officer Daniel Creden) testified to the circumstances surrounding the execution of the warrant.

Corporal Hall's suppression testimony revealed that he had announced his identity and purpose prior to entering forcibly into DeMichel's home. However, at trial "Corporal Hall ... described the events surrounding the police's entry into appellant's home *but failed to mention that he had given any warnings to the occupants ....*" (Emphasis added) *Id.,* 442 Pa. at 558, 277 A.2d at 161. On the other hand, Officer Creden, the officer who actually knocked on appellant's door, testified that he announced his identity *and that is all he said* before directing another officer to knock the door down with a sledge hammer.

After the filing of post-verdict motions, the trial judge arrested judgment "on the ground that the evidence at trial

demonstrated that the officers who executed the search warrant had not announced their purpose before resorting to forcible entry." *Id.*, 442 Pa. at 559, 277 A.2d at 162. This course of action effectively overruled the decision of the suppression hearing judge, and, on that basis, the Superior Court reversed the order granting arrest of judgment and remanded the case for sentencing.

Our Supreme Court granted *allocatur,* and, in the following passage, dispelled the erroneous belief held by both the Superior Court and trial court; *viz.:*

Preliminarily we note our disagreement with the Superior Court's apparent categorical holding that a trial judge is powerless to overrule the decision of a suppression hearing judge. While "[w]e impliedly held in *Commonwealth v. Warfield,* 418 Pa. 301, 211 A.2d 452 (1965) that the trial judge cannot reverse *on the same record at trial* the decision made after the pretrial suppression hearing * * *," *Commonwealth v. Washington,* 428 Pa. 131, 133 n. 2, 236 A.2d 772, 773 n. 2 (1968) (emphasis added), the same does not hold true when the trial judge's different ruling is based upon new and different evidence. When information comes to light after the suppression hearing clearly demonstrating that the evidence sought to be introduced by the Commonwealth is constitutionally tainted, no consideration of justice or interest of sound judicial administration would be furthered by prohibiting the trial judge from ruling it inadmissible. Although *a favorable ruling at the suppression hearing relieves the Commonwealth of the burden of proving a second time at trial that its evidence was constitutionally obtained, the trial judge must exclude evidence previously held admissible at the suppression hearing when the defendant proves by a preponderance of new evidence at trial that the evidence sought to be introduced by the Commonwealth was obtained by unconstitutional means.*

Although we thus disagree with the Superior Court, we believe that the trial judge in the instant case erred in granting appellant's motion in arrest of judgment upon

the basis of a finding that the police officers executing the search warrant did not properly announce their purpose before entering appellant's house. *Officer Creden* testified unequivocally at trial that *he* had made no announcement of purpose, but he *did not state that his fellow officers were similarly mute or contradict Corporal Hall's suppression hearing testimony that Hall had made such an announcement of purpose. That being so, the record at trial in no way proves the absence of a proper police announcement of purpose.* (Emphasis added in part) (Footnote omitted)

*Id.*, 442 Pa. at 559–61, 277 A.2d at 162–63.

■ Instantly, it is beyond question that the Commonwealth established *at the suppression hearing* the legality of the police's actions prior to the securement of the complained-of-evidence. This is reflected in the pre-trial court's denial of Monarch's motion to suppress. Thus, in accordance with *DeMichel,* the "favorable ruling at the suppression hearing relieve[d] the Commonwealth of the burden of proving a second time at trial that its evidence was constitutionally obtained[.]" This philosophy is also reflected in paragraph (j) of Pa.R.Crim.P. 323, which reads in pertinent part:

*If the court determines that the evidence shall not be suppressed, such determination shall be final, conclusive and binding at trial,* except upon a showing of evidence [, by the defendant,] which was theretofore unavailable .... (Emphasis added)

Consequently, the post-trial motion court was erroneous in its belief that the Commonwealth had the burden of proving, again, at trial that the police were acting under the mantle of constitutional authority. On the contrary, it was for the defense to prove "by a preponderance of *new* evidence at trial" the negative of such a proposition. *See Commonwealth v. DeMichel, supra;* Pa.R.Crim.P. 323(j).

[5–7] This the appellee failed to do.

A review of the suppression and trial transcript reveals that Mrs. Monarch's testimony on those two occasions was

*identical* as to the issue of consensual entry. Thus, we have the absence of any "new" evidence having been produced by the defense at trial to establish that what Patrolman Hoover testified to was tainted as the product of constitutionally infirm police conduct. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Furthermore, our reading of Patrolman Hoover's testimony, at both the suppression and trial (RR. 15A & 72A–73A), consistently adheres to the revelation (which is contrary to the post-trial motion court's finding) that only *after* entering the house did he observe Mr. Monarch to be in an intoxicated condition. In other words, at trial, we have no evidence emanating from Patrolman Hoover to show that he was either not given consent to enter the Monarch's residence or that he contradicted his suppression hearing testimony that Mrs. Monarch had made such an announcement of consent. That being so, the record at trial in no way proves the absence of a proper police securement of consensual entry preceding the incriminating viewing of the appellee in an inebriated state. *Commonwealth v. De-Michel, supra.*

Accordingly, having found no other reason to justify a suppression of the incriminating evidence observed by the police prior to their warrantless arrest of the appellee,[3] we

---

**3.** We believe the suppression court was correct in its analysis that, under *Commonwealth v. Williams,* 483 Pa. 293, 396 A.2d 1177 (1978), the police acted properly in arresting the appellee when they did.

For example, within minutes of a reported hit-and-run the police arrive on the scene; are told by a witness that appellee committed the offense; and parked the vehicle in a driveway, which, upon inspection, indicates recent damage. Also, appellee's wife admits to her husband's involvement and permits the police entry into her home. Once inside, appellee is observed in an intoxicated condition.

We are of the mind that the preceding was sufficient information to lead the police to believe that a crime had been committed and the appellee had committed it. As for the warrantless nature of the arrest in appellee's abode, we find that: 1) given the evanescent nature of the evidence (alcohol), *see Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); 2) a strong reason to believe that the appellee was on the premises; 3) entry was peaceable; and 4) the existence of probable cause coalesced to create the "exigent circum-

reverse the Order of the court below awarding a new trial, direct that the verdict be reinstated and sentence be imposed. Jurisdiction is relinquished.

WIEAND, J., concurs in the result.

TAMILIA, J., filed a concurring and dissenting opinion.

TAMILIA, Judge, concurring and dissenting:

While I concur in the legal analysis of the majority, which is consistent and well reasoned, I would add that I believe the trial judge should be given the freedom to correct himself when he views an obvious error in his analysis of the suppression testimony, whether or not new evidence has been presented.

Although it is conceivable we could treat the trial court's changed view of the police officer's testimony as new evidence, since there was some difference between his testimony at trial and that at the suppression hearing, the issue is still one of credibility. He was believed by the suppression judge as to his probable cause for arresting the defendant, and at jury trial, his testimony as to the charge was believed by the jury.

As to the determination of credibility by the jury, its findings would apply only to ·the elements necessary to prove the crime charged, and it would not be inconsistent for the lower court to find a lack of credibility on the

stances" calling for the action complained of by the appellee. We observe, as did the Court in *Williams,* that of the factors that are to be considered in determining whether a warrantless arrest in one's home is to be sanctioned, some factors will outweigh others in balancing the scale either for or against upholding the conduct of the police.

We believe that the police acted properly under the circumstances presented to the suppression court. Albeit the crime involved was not one of violence and Patrolman Hoover had no reason to believe that the appellee was armed and dangerous, we think it prudent that the police acted swiftly to apprehend the appellee. *See Commonwealth v. Hartford,* 313 Pa.Super. 213, 459 A.2d 815 (1983); *cf. Commonwealth of Pennsylvania, Dept. of Trans., Bureau of Traffic Safety v. Guarino,* 19 Pa.Cmwlth. 104, 339 A.2d 861 (1975) (Six months suspension of one's driver's license could not be sustained where motorist was not transported to situs of necessary breathalyzer equipment for administering such a test).

suppression issue even though the jury found otherwise on the charge itself. *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968).

During post-trial proceedings, the learned trial judge noted what he considered to be a discrepancy in the police officer's testimony at trial, which cast doubt on his suppression testimony.[1] This deviation could not be perceived by the jury, since it did not have the benefit of the suppression testimony. When a party upon whom the burden of proof rests, in either a criminal or a civil case, offers evidence

1. The interpretation I would place on the trial court's basis for a change in his view of the suppression testimony is that he believed (in error) at the time of the suppression hearing that the police officer viewed the defendant's behavior from the porch after being invited to come to the porch.

Based on pages 15A and 22A of the record, the suppression court made these two findings of fact:

(4) At the insistence of Patrolman Hoover, Mrs. Monarch agreed to see what she could do in order to give Patrolman Hoover a chance to speak with defendant. Hoover followed Mrs. Monarch as she walked toward defendant's home. At the very least, Patrolman Hoover had Mrs. Monarch's permission to stand on the defendant's porch.

(5) From the porch, Patrolman Hoover could see defendant standing in his living room. The defendant appeared intoxicated. Patrolman Hoover entered the Monarch home and arrested the defendant for driving while intoxicated. Patrolman Hoover did not have a warrant for defendant's arrest. Shortly thereafter, Patrolman Hoover was joined by Captain Baker.

From these findings of fact, the suppression court made this conclusion of law:

(1) Since Patrolman Hoover was on the defendant's porch with Mrs. Monarch's permission, everything he observed prior to defendant's arrest shall not be suppressed.

At trial (pages 72–73), the testimony of Hoover supports the fact that he made his crucial observation of defendant's insobriety *after* entry of the house. The trial (suppression) judge, therefore, never ruled on the issue of unlawful entry, although he had the opportunity to do so at the suppression hearing. At the post trial stage, he recognized his error on the facts, and after reviewing both the suppression and the trial record, concluded the evidence could not support the conclusion that the view was made from the porch. Since there could not be a view from the porch, the trial judge was *for the first time* required to decide on post trial motions whether there was a right of entry. This was purely a question of credibility which is exclusively within the trial court's domain. He believed the defendant's wife rather than the police officer and, therefore, arrested judgment and granted a new trial.

consistent with two opposing propositions, he proves neither. *Commonwealth v. Crockett,* 229 Pa.Super. 80, 323 A.2d 257 (1974). I believe, despite the absolute position enunciated by Pa.R.Crim.P. 323(j) and the case law, *Commonwealth v. Bonser,* 215 Pa.Super. 452, 258 A.2d 675 (1969); *Commonwealth v. DeMichel,* 214 Pa.Super. 392, 257 A.2d 608 (1969), that while suppression matters may not be relitigated in trial, the trial judge should have the opportunity in post-trial proceedings, to correct errors that might have occurred during the suppression proceeding. Acting as a court en banc, he has that capacity in virtually any other procedural or substantive matter where error is apparent. As a trial judge, we have observed situations when there was clearly error by the suppression court, which we were powerless to correct absent new evidence, whereupon the only remedy was appeal and remand by the appellate court. This issue was faced by this Court in *Commonwealth v. Griffin,* 257 Pa.Super. 153, 157–158, 390 A.2d 758, 760 (1978).

In that case, the matter at issue concerned a Rule 1100 order entered by the suppression judge, denying the motion and calling the case to trial. This order was appealed and the appeal was quashed and remanded for trial. The trial judge, on appellee's motion, called for an evidentiary hearing, and, finding a violation of Rule 1100, dismissed all charges. The dismissal was appealed by the District Attorney of Washington County, who alleged that the dismissal order was a nullity. In his Opinion, Price, J. stated:

Absent some new evidence, it is improper for a trial judge to overrule an interlocutory order by another judge of the same court in the same case. There must be some degree of finality to determinations of all pre-trial applications so that judicial economy and efficiency can be maintained. We therefore find that it was inappropriate for Judge Gladden to issue a subsequent ruling on the motions to dismiss. Having so held, we feel that in the instant case the interests of judicial economy require that we decide the Rule 1100 issue. While we emphasize our disapproval

of the procedure herein employed, we are not prepared to adopt the Commonwealth's position that the order of July 16, 1976, is a nullity. *In this area some discretionary freedom must be allowed to the judge of the court below* ... that reversing the lower court's order and permitting the case to go to trial, especially when appellees are clearly entitled to discharge, would only serve to postpone unjustifiably this ultimate result, we do not find an abuse of that discretion.

*Id.*, 257 Pa.Super. at 157–158, 390 A.2d at 760. (emphasis added) Also see, *Commonwealth v. Cox*, 276 Pa.Super. 29, 32, 419 A.2d 78, 80 (1980). (Overruled on other grounds, *Commonwealth v. Lewis*, 295 Pa.Super. 61, 440 A.2d 1223 (1982).) It is apparent that the lower court was correct in its analysis and this Court, with the benefit of that analysis, was able to resolve the matter without remand.

Despite his best intentions and unquestioned concern for justice and fairness, the learned trial judge had a second insurmountable obstacle to overcome, which under present law would prevent us from affirming his decision. A trial judge, in post-conviction proceedings, in keeping with the standards articulated for considering a motion in arrest of judgment, may not re-evaluate the credibility of a witness or the weight given to that witness by the jury, and it may be added, the credibility and weight afforded by the suppression judge, absent new evidence. *Commonwealth v. Meadows*, 471 Pa. 201, 205 n. 5, 369 A.2d 1266, 1268 n. 5, (1977); *Commonwealth v. Combs*, 298 Pa.Super. 527, 445 A.2d 113 (1982).

It would appear that expanding the discretion of the trial judge in this respect would improve judicial economy without sacrificing the desirable finality of determination.

I would defer to the judgment and impressions of the trial judge, since he had the opportunity to view the witnesses and sense the nuances and inflection of tone and mannerisms that are essential to a determination of credibility.

The *Griffin* court hinted at allowing some discretionary freedom to the court below which I would endorse in the

present case as permitting the trial judge to reconsider his findings, on review, particularly when the standard of proof in suppression matters is a preponderance of the evidence, while the standard in a trial on the merits is proof of all elements of the crime beyond a reasonable doubt. *Commonwealth v. Ohle*, 291 Pa.Super. 110, 435 A.2d 592 (1981); *Commonwealth ex rel. Butler v. Rundle, supra; Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

Even though the evidence may not be new, if evidence is more vague or contradictory at trial or the suppression evidence misinterpreted so as to cause a trial judge, particularly one who was also the suppression judge, to conclude error was made in granting the suppression motion, judicial economy should require this determination at that time rather than having it decided on appeal. It has long been the law of Pennsylvania that counsel should raise in post verdict motions any issue which has a reasonable possibility of success on appeal, although he is not required to raise issues which are clearly without merit. *Commonwealth v. Learn*, 233 Pa.Super. 288, 335 A.2d 417 (1975).

When the evidence on suppression need only meet a preponderance of evidence standard, which means that it is more probable than not to be true, there will be cases where a slight deviance in testimony or evidence at trial can have a significant effect on credibility. If, under these circumstances, despite a reading of the testimony in the light most favorable to the Commonwealth, *Commonwealth v. Johnson*, 228 Pa.Super. 364, 323 A.2d 295 (1974); *Commonwealth v. Valderrama*, 479 Pa. 500, 388 A.2d 1042 (1978), a determination is made that error was committed, the court should grant a new trial in the interest of justice. *Commonwealth v. Pinno*, 433 Pa. 1, 248 A.2d 26 (1968). *Commonwealth v. Williams*, 229 Pa.Super. 390, 396, 323 A.2d 862 (1974).

On review, this Court is increasingly finding that the concept of finality of determination results in cases coming before the court on appeal, which could have been or were effectively resolved in the court below, but were in technical

violation of the procedural rules or existing appellate case law. This is such a case.

It would appear that judicial economy and efficiency would be better served by permitting the trial court to review these matters on post trial motions. It is in a better position to do so and the doctrine of finality of determination is served by having a record even more complete, and this Court would not have to engage in the fiction of finding procedural error while affirming the trial court on the decision it would be required to make on remand.

For these reasons I would affirm the judgment of the court below.