492 A.2d 420

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**John MADDEN.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1984.

Filed April 26, 1985.

Ann A. Osborne, Assistant District Attorney, Radnor, for Com., appellant.

Paul G. Hughes, Broomall, for appellee.

Before CAVANAUGH, BECK and TAMILIA, JJ.

TAMILIA, Judge:

This appeal was taken from the Order of the trial court in a criminal proceeding wherein the trial court granted a hearing on the appellee's petition for "decertification" of his offenses which had been certified to the criminal court after a juvenile certification proceeding pursuant to section 6355 of the Juvenile Act, 42 Pa.C.S.A. § 6301 et seq.

This case originated when juvenile petitions were filed charging the defendant, sixteen years of age, in each of four separate petitions, with possession of controlled substance in violation of 35 P.S. 780–113(a)(16) and possession with intent to deliver a controlled substance in violation of 35 P.S. 780–113(a)(30). A possession or use would bring a sentence of one year imprisonment and a fine of $5,000. The penalty under section 113(a)(30) is a felony and would bring a penalty of five years imprisonment and a fine of $15,000. The Commonwealth, at the certification hearing, established a prima facie case on each of the counts which were certified to the criminal court. The first involved an

offense that occurred on February 1, 1983 at approximately 3:00 p.m.; a transfer occurred of 50 doses of LSD to undercover detectives by the defendant and a companion for the price of $135. Prior to the next transaction, the undercover detective was in touch with the defendant who informed him that he could procure drugs such as quaaludes and seconal and up to 10,000 doses of LSD. On February 18, 1983, at 3:00 p.m., contact was made with the defendant and together they drove in the undercover agent's car to an area near Holy Cross College where a transfer of 100 doses of LSD was made to the agent for an amount of $200. During the course of that transaction, discussion concerning other possible transfers was had during which the defendant asked if the agent would move large quantities of cocaine and during which the defendant confirmed that he could procure large doses of LSD. On the same day, at a later time, they drove to another man's house where the defendant entered and returned to the vehicle providing the agent with 160 doses of LSD for $300 in currency. A second agent testified that on May 25, 1983, at about 3:35 p.m., he met the defendant behind the Delaware County Hospital at the Upper Darby High School. The transfer from the defendant to the agent involved about one ounce of hashish for the price of $85. The agents testified that in their opinion, the defendant was involved in a sophisticated drug operation.

Also, at the certification hearing testimony was presented by a supervisor of the Delaware County Juvenile Court Probation department. It was her testimony, after reviewing the records relating to the defendant without interviewing him, that in relation to the serious nature of the crimes and her appraisal of the need for long-term custodial treatment, there were no available juvenile facilities that could adequately handle the defendant's treatment. She also testified there was nothing to indicate he required treatment in a mental health facility. Her judgment was that he was not amenable to the facilities of the juvenile justice system based on the nature of the offenses which are

considered to be extremely dangerous. The reason given for this opinion was that the juvenile facilities provided treatment for periods between six and nine months and that because of the serious nature of these offenses, the defendant required a much longer term of custodial treatment. Her testimony, on cross-examination, was that community treatment or probation were not suitable alternatives. The defendant had no prior juvenile record and except to the extent of the workup and study that was done in the detention home, there was no written report; the only social record supplied to the court being the supervisor's report. One reason given for not doing a study prior to the certification hearing was the need to obtain the approvals of the child, his attorney and the administration, which had not been obtained. In response to the appellee's attorney's question, the probation administrator acknowledged that no study had been done specifically dealing with John Madden to determine whether he was amenable to rehabilitation in the juvenile court system.

Pursuant to *Commonwealth v. Stokes*, 279 Pa.Super. 361, 421 A.2d 240 (1980) the certification court was required to make a statement of his reasons for certification; this statement being sufficient to demonstrate that the question of certification has received careful consideration in the juvenile court. This is pursuant to 42 Pa.C.S.A. § 6355, *supra*. In this regard, the court made a statement in which he acknowledged being governed by the provisions of the Juvenile Act and in consideration thereof, he made findings concerning the age of the juvenile and that notice had been given that the acts alleged would be considered a felony if committed by an adult and that there were reasonable grounds to believe that the child was not amenable to treatment, supervision or rehabilitation as a juvenile through available facilities, based on the supervisor's testimony. He made a further finding that the child was not committable to a mental facility. Certification to the criminal court was made upon the recommendation of the district attorney, based on the facts presented by the investigative

officers on the four separate petitions, on each of which was established a prima facie case. The investigating officers also believed that the juvenile was not amenable to juvenile court services.

On the basis of those findings, certification was ordered and the case was subsequently scheduled for trial in the criminal court. Prior to trial, the appellee submitted a petition to the criminal court entitled "Petition for Decertification." In that petition, it was alleged that no basis for certification had been made out at the certification hearing in the juvenile court and that the criterion required to be followed under section 6335 of the Juvenile Act had not been complied with. The Honorable R. Barclay Surrick, Judge of the Criminal Court, permitted a hearing on the petition and upon testimony presented by an expert witness, a psychologist, he granted the petition for decertification, holding that the child was amenable to juvenile court treatment; he remanded the case to the juvenile court.

The Commonwealth appealed from the finding and Order of court remanding the case to the juvenile court alleging that the hearing was improper and that the criminal court judge had no jurisdiction to entertain a petition for decertification as the matter was interlocutory. It was the District Attorney's position that the criminal proceeding must be completed before any action could be taken on certification and only appellate review was in order at that time.

The Juvenile Act, § 6355, Transfer to Criminal Proceedings, provides as follows:

(a) General Rule.—After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances, of this Commonwealth, the court before hearing the petition on its merits may rule that this chapter is not applicable and that the offense should be prosecuted, and transfer the offense, where appropriate, to the division or a judge of the court assigned to conduct criminal proceed-

ings, for prosecution of the offense if all of the following exist:

. . . . .

(b) Chapter inapplicable following transfer.—The transfer terminates the applicability of this chapter over the child with respect to the delinquent acts alleged in the petition.

. . . . .

(f) Transfer action interlocutory.—The decision of the court to transfer or not to transfer the case shall be interlocutory.

The interpretation of the transfer sections of the Juvenile Act have been frequently passed upon by the Pennsylvania Supreme Court and our Superior Court and there is no question about their meaning. This matter was considered by the full court in *Commonwealth v. Pitt*, 254 Pa.Super. 159, 385 A.2d 574 (1978). The definitive statement in that case is that once a case involving a juvenile is certified, the criminal court case cannot be transferred back to the juvenile court. Thus an Order remanding a case to the juvenile court was without legal efficacy and if the criminal court would subsequently remand the case to the juvenile court, that court could merely reinstate its original order and was not required to hold a hearing before doing so. The *Pitt* court said: "Once the matter was certified to criminal court the case could not be transferred back to juvenile court." *Id.*, 454 Pa.Superior Ct. at 162, 385 A.2d at 575.

The issue of appellant's non-amenability to treatment within the juvenile court system had been determined at the certification hearing. That determination is final and should not be relitigated in another co-equal court. Thus for two reasons a judge of the criminal court improperly considered the petition for decertification. First, in compliance with *Pitt*, the issue of certification was not reviewable by the criminal court whether it alleged there was a failure to comply with due process in the juvenile proceeding or that there was new evidence. There simply is no basis in

law for entertaining a petition for decertification. Secondly, by a specific provision of the Juvenile Act, § 6355(f), the certification was interlocutory and the rule is that one judge may not pass upon a decision of another judge on an interlocutory matter. *See Commonwealth v. Ryan*, 306 Pa.Super. 159, 452 A.2d 264 (1982); *Commonwealth v. Brown*, 485 Pa. 368, 402 A.2d 1007 (1979); *Commonwealth v. Monarch*, 330 Pa.Super. 165, 479 A.2d 491 (1984); *Commonwealth v. Griffin*, 257 Pa.Super. 153, 390 A.2d 758 (1978). Under the state of the law, as espoused in these cases, and pursuant to the statute, the judge of the criminal court has improperly constituted himself an appellate court and he has done more than ruling differently on alleged new facts. He has, in effect, directed the judge of another branch of the court to proceed with a trial on matters of which he has divested himself. No change of facts or additional facts under these circumstances can alter the result required by the decertification Order. Pursuant to *Pitt, supra,* the juvenile court judge is required to do nothing but reinstate his order. Under these circumstances, the procedure is deadlocked, and no trial will occur unless there is intervention by the appellate courts. This is precisely the situation which the prohibition against a co-equal judge, rescinding the order of a colleague, is designed to prevent. The appellee relies heavily on *Brown, supra* as holding that a remand of a certification petition can result from a presentation and finding concerning new evidence. In that case, the court below failed to reach the merits of the appellant's claim for decertification, holding that it had no authority to review a decision of a judge from another division of the same court of common pleas. Since that was the Order which was passed upon by the Supreme Court, that Order being affirmed, we can only consider the statement at the end of the Opinion, "as appellant has never sought to introduce new evidence, the Order denying the motion to quash the transfer must be affirmed", to be dicta and not controlling. *Griffin* and *Monarch, supra* held, that which has been consistently the rule, that an interlocutory order is not reviewable in the court below nor is it appeala-

ble unless there is new and different evidence that would prove the Commonwealth's evidence to be tainted. In the case sub judice, the new evidence relied upon was the testimony of a psychologist who alleged that the defendant could be helped in the community by psychological counselling in a regional MH/MR drug counselling program. This is not the quality of new evidence that would have a bearing on the reason for certification since the juvenile judge determined that community programs of probation of whatever nature were inappropriate for crimes of the severity of the ones in which the defendant was involved and that long-term institutional treatment was required. Such evidence is a difference of opinion but it does not qualify as new evidence sufficient to change the findings of the juvenile judge. A careful review of most of the cases involving juvenile certification in Pennsylvania produced only one in which the remand was permitted prior to the completion of the criminal trial resulting from certification. In that case, *In the Interest of George S.,* 286 Pa.Super. 217, 428 A.2d 650 (1981), this Court passed upon the issue of whether or not the certification to the criminal court before a juvenile case was heard on the merits would constitute double jeopardy. Appellant had relied heavily upon the case of *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). The Superior Court held that *Breed* did not apply to that case and that it was not a double jeopardy question. However, it went beyond the necessity of deciding that issue. The case had come before the Superior Court on appeal from a remand to the juvenile court by the criminal court of the Delaware County Court, similar to the procedure presented here. There, the district attorney was defending against a charge of double jeopardy by the appellant, who alleged that to transfer the case back to the juvenile court constituted double jeopardy. The Superior Court held this was not double jeopardy and affirmed the court below permitting the case to be heard as a juvenile case. That case will not be followed here as it did not deal with the issue now before this Court and if the Court at that time had applied all of the law as to certification, it is

unlikely that it would have permitted a remand order to stand.

In *George S., supra,* following the case law and the statute with respect to the remand to the juvenile court from the criminal court, a proper resolution would have been to have the case remain as certified to the criminal court and to consider as interlocutory the matters as to certification and remand, not reviewable until after completion of the criminal proceeding. In *Commonwealth v. Harrod,* 260 Pa.Super. 312, 394 A.2d 567 (1978), after defendant was convicted before the trial division of Philadelphia County Court, Criminal Section, of robbery, criminal conspiracy and possession of an instrument of crime, an appeal was taken and this Court held that upon review of the certification proceedings, there were insufficient findings upon which the Superior Court could make a meaningful review. Without disturbing the conviction, the case was remanded for another and more complete certification hearing in juvenile court.

In *Commonwealth v. Lux,* 299 Pa.Super. 136, 445 A.2d 185 (1982), following a conviction for robbery, theft and conspiracy in the criminal court of Delaware County, the Superior Court, in its review of the certification proceeding on appeal, found that the proceeding, in many respects very similar to that of the present case, was inadequate in relation to the evidence as to amenability. They held that the judgment of sentence would be vacated and that there would be a remand for a new certification hearing whereupon, if certification again occurred, the judgment of sentence would be reinstated and, if necessary, a new appeal would lie.

In *Commonwealth v. Bey,* 249 Pa.Super. 185, 375 A.2d 1304 (1977), the defendant was convicted of rape and involuntary deviate sexual intercourse in the criminal court after being certified as a juvenile. On appeal, this Court held that because there was insufficient specification of the reasons for certification to comply with the statutory mandate of section 28 of the act of December 6, 1972, P.L. 1464

No. 333, the forerunner of section 6355, a return to the juvenile court was required for a new certification hearing with the evidence to be limited solely to that introduced at the initial certification hearing. If it was then determined that certification was improper, the indictments were to be dismissed and appellant returned to the juvenile court. If it was determined that certification was proper, then the appellant's sentence would be affirmed.

In *Commonwealth v. Deppeller*, 314 Pa.Super. 368, 460 A.2d 1184 (1983), after certification to the criminal court in Monroe County, a sentence of two and one-half to five years imprisonment followed a plea of guilty to robbery. On appeal this Court held that where a juvenile judge did not provide any reasons for the transfer order certifying the juvenile to the adult court, the Superior Court was unable to afford a meaningful review of the juvenile proceedings. Again, this Court remanded for a further certification hearing limited to the evidence introduced at the initial certification hearing. If again the appellant was certified to the criminal court, judgment of sentence was to be reinstated, if not certified to the criminal court, the case would remain to be tried as a juvenile matter.

In *Stokes, supra,* a criminal trial, appellant was convicted of indecent exposure and rape. After denial of post-trial motions, an appeal was taken and the appropriateness of the certification proceeding in the juvenile court was considered by this Court. On review of that proceeding, the case was remanded to the juvenile section of the family court division of the common pleas court for another and more complete certification hearing. By this disposition of the Superior Court, appellant's conviction was not disturbed, with appellant given the right to file another direct appeal from the new certification hearing if he so wished.

In *Commonwealth v. Greiner*, 479 Pa. 364, 388 A.2d 698 (1978), the appellant was convicted of criminal conspiracy, attempted murder, attempted kidnapping and aggravated assault; he appealed the judgment of sentence of the Court of Common Pleas of Lancaster County. There our Supreme

Court held that the Commonwealth, which must bear the burden of establishing that the provisions of the Juvenile Act were inadequate for the treatment of the juvenile, failed to meet its burden for certification to the criminal court, where the record showed positive amenability of the juvenile to the resources of the juvenile court. In *Greiner*, the Supreme Court was able to determine on the record the failure of the Commonwealth to meet its burden *and* the appropriateness of the juvenile court dispositional alternatives, and therefore vacated judgment of the criminal court and remanded to the juvenile court for further proceedings therein. It is necessary to emphasize that all of the evidence in the juvenile procedure pointed to the child's stable home life, the better rehabilitative processes of the juvenile court for his purposes, that he was an above-average student, presented no discipline problem, and other than the severity of the offense, there was no basis for the transfer to the criminal court.

From a review of these cases, we can draw only one conclusion, that is, that a certification hearing in the juvenile court is an interlocutory proceeding and not reviewable by the criminal court judge and that there is no basis for remand or "decertification" of a juvenile case once it is certified to the criminal court. That is not to say there is no legal remedy for an appellant who appears to have been wronged by the certification. This remedy, however, comes at the end of all the proceedings which is in keeping with the doctrines of finality and judicial economy. Only when the case has run its course through the criminal court may we consider the appropriateness of certification. As can be seen by the cases cited, the remedy is an adequate one and has provided a fair and just result in those cases which warranted a remand, providing an opportunity for the juvenile court to clarify its certification statement without undoing the judgment of sentence or where required, permitting the juvenile court to proceed with an adjudication under the Juvenile Act if certification could not be made out. Since at least two of the cases which we have reviewed involve what

appears to be the confused procedure in the Delaware County Court, that is *Lux* and *George S., supra,* it appears desirable at this time to set firmly the procedure and policy which should be followed by both the juvenile and the criminal court in conformance with the majority of the decisions cited. If we were to permit the decertification, it would appear contrary to the law and the practice established by a long line of cases. If we were to order an additional certification hearing, we would set a precedent which would result in appeals from certification findings contrary to the legislative determination that they are interlocutory. It would be tempting to review the certification findings themselves at this point for the sake of judicial economy if nothing else, but it is believed this would be an encouragement to a procedure, that as illustrated here, causes confusion and delay.[1]

We would, therefore, remand this case to the criminal court of Delaware County and quash the decertification order and direct that this case proceed to trial as a criminal case with a review as to the sufficiency of certification findings to follow in due course upon completion of the proceedings in the criminal court and such post-trial motions attendant thereto.

Order of decertification quashed and criminal information is reinstated.

Jurisdiction is relinquished.

Dissenting opinion by Beck, J.

1.  In her Dissenting Opinion, Judge Beck alleges the majority Opinion ignored the threshold question of the interlocutory nature of the lower court's order of decertification. To the contrary, since we have determined that the decertification proceeding and order, according to governing legal principles, are nullities, (*Pitt, supra* at page 575) treating that order as interlocutory and not appealable would result in the case floating in limbo between the juvenile and criminal court. Neither court would have an appealable order and neither judge would be required to hear the case. That jurisdictional morass may only be resolved as detailed by the majority Opinion.

132

BECK, Judge, dissenting:

I respectfully dissent and would quash the Commonwealth's appeal. Although improper procedure was arguably employed below by both parties, the majority in its zeal for procedural correctness ignores a fundamental rule of procedure for this court. That is, this court accepts appeals only from final orders of the lower court. 42 Pa.C.S. § 742. The decertification order, whether or not it was proper below, is an interlocutory order and, hence, unappealable at this time. Conspicuously, the majority does not even mention this threshold issue in its opinion. In sharing the majority's concern for proper procedure, then, I must dissent and would quash this appeal as unripe for review.