645 A.2d 234

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Stephon JOHNSON, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1993.

Filed July 5, 1994.

Petition for Allowance of Appeal Granted Dec. 7, 1994.

134

Jenifer Shirey, Asst. Dist. Atty., Erie, for the Com., appellant.

John M. Bonanti, Erie, for appellee.

Before ROWLEY, President Judge, and McEWEN, DEL SOLE, BECK, TAMILIA, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

POPOVICH, Judge:

Today, we are presented with a most unusual appeal by the Commonwealth from a juvenile adjudication of delinquency and subsequent disposition. Herein, appellee, the juvenile, was charged with murder and related offenses in the criminal division of the Erie County Court of Common Pleas. However, pursuant to appellee's petition, the case was transferred to the juvenile division of the court, and appellee was adjudicated delinquent. Never before has the Commonwealth questioned the propriety of an order transferring a case from the criminal division to the juvenile division of the court of common pleas *after* the juvenile has been adjudicated delinquent and committed. Thus, we are presented with a case of first impression.[1]

Herein, we are asked to resolve several difficult questions, the first two of which, in turn, require us to examine the definition of "jurisdiction" as it applies to juvenile transfer orders. First, we must determine whether the Commonwealth has filed this appeal in a timely manner. Second, we must decide whether the Commonwealth is nevertheless prohibited from prosecuting appellee as an adult in the criminal

---

1. Almost always, it is the juvenile who appeals an order which transfers his case from the juvenile division to the criminal division or an order which denies his petition to transfer the case from the criminal division to the juvenile division. *See e.g., Commonwealth v. Pyle*, 462 Pa. 613, 342 A.2d 101 (1975); *Commonwealth v. Greiner*, 479 Pa. 364, 388 A.2d 698 (1978); *Commonwealth v. Moyer*, 497 Pa. 643, 444 A.2d 101 (1982); *Commonwealth v. Leatherbury*, 390 Pa.Super. 558, 568 A.2d 1313 (1990), *allocatur denied*, 525 Pa. 643, 581 A.2d 570 (1990); *Commonwealth v. Zoller*, 345 Pa.Super. 350, 498 A.2d 436 (1985); *Commonwealth v. Sanders*, 339 Pa.Super. 373, 489 A.2d 207 (1985); *Commonwealth v. Deppeller*, 314 Pa.Super. 368, 460 A.2d 1184 (1983); *Commonwealth v. Lux*, 299 Pa.Super. 136, 445 A.2d 185 (1982); *Commonwealth v. Stokes*, 279 Pa.Super. 361, 421 A.2d 240 (1980). Only once before has the Commonwealth appealed from a transfer order, and, in that case, the Commonwealth appealed before an adjudication of delinquency occurred in the juvenile division of the court. *See, Commonwealth v. Madden*, 342 Pa.Super. 120, 492 A.2d 420 (1985).

division of the court of common pleas by the double jeopardy protections of the United States and Pennsylvania Constitutions which were made applicable to juvenile proceedings by the United States Supreme Court in *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Third, assuming the appeal is timely and the adult prosecution is not barred by the prohibition against double jeopardy, we must decide whether the lower court, i.e., the judge of the criminal division of the court of common pleas, committed a gross abuse of discretion in transferring appellee's case to the juvenile division. *See, Leatherbury,* 568 A.2d at 1315 (standard of review for transfer orders); *Commonwealth v. Brown,* 332 Pa.Super. 35, 40, 480 A.2d 1171, 1174 (1984) (same).

The record reveals that on October 18, 1991, appellee, then sixteen years of age, conspired with two acquaintances, Antonio Howard and Richard Noble, to commit a robbery.[2] Having been unsuccessful in an earlier attempt to rob a grocery store, the boys decided to rob the driver of their taxi cab, Richard Stevens. During the robbery, Mr. Stevens was shot in the head by Richard Noble. Appellee removed a clip-board and satchel from the taxi, and the minors fled. Ten days later, appellee was arrested and charged with murder, robbery, theft, criminal conspiracy and receiving stolen property.

Following the arrest, the Commonwealth filed its notice of intention to seek the death penalty, and appellee petitioned the court to transfer his criminal prosecution to the juvenile division for disposition under the terms of the Juvenile Act. *See,* 42 Pa.C.S.A. § 6301, *et seq.* Following a hearing, the criminal court determined that appellee was amenable for treatment, supervision or rehabilitation as a juvenile. *See,* 42 Pa.C.S.A. §§ 6322(a), 6355(a)(4)(iii)(A). Accordingly, appellee's case was transferred to the juvenile division of the court. An adjudicatory hearing was held in the juvenile division, and appellee was found to be delinquent based upon charges of

---

**2.** Antonio Howard and Richard Noble were also juveniles at the time that they committed the robbery and murder in question. They both were tried and convicted on murder and related charges as adults in the criminal division of the court of common pleas.

murder, robbery, theft, criminal conspiracy and receiving sto-
len property. Subsequently, a disposition hearing was held,
and appellee was committed to the New Castle Youth Devel-
opment Center for an indefinite period of time. The Com-
monwealth then filed this appeal which questions the propriety
of the order transferring appellee's case from the criminal
division to the juvenile division.

First, we will address the question of whether the
Commonwealth has filed its appeal in a timely manner. As a
general rule this court accepts appeals only from final orders.
42 Pa.C.S.A. § 742. The Commonwealth argues that an order
which transfers prosecution of a minor from the criminal
division of the court of common pleas to the juvenile division is
interlocutory and not appealable unless and until a final
disposition order is entered. In support of their argument,
the Commonwealth cites 42 Pa.C.S.A. § 6355(f), which pro-
vides: "The decision of the court to transfer or not to transfer
the case shall be interlocutory." Such a definitive recitation of
the law would ordinarily be dispositive but for the fact that
§ 6355 of the Juvenile Act applies expressly to transfers from
the juvenile division to the criminal division *only*. That
section says absolutely nothing about the status of orders
which grant or reject transfers in the opposite direction, i.e.,
from the criminal division to the juvenile division. In fact, the
section of the Juvenile Act which governs transfer of juveniles
charged with murder from the juvenile division to the criminal
division is silent regarding whether an order granting or
denying such a transfer is interlocutory. *See,* 42 Pa.C.S.A.
§ 6322.[3]

---

3. 42 Pa.C.S.A. § 6322, Transfer from criminal proceedings, in pertinent
part, provides:

 (a) **General rule.**—Except as provided in 75 Pa.C. § 6303 (relating
to rights and liabilities of minors) or in the event the child is charged
with murder or has been found guilty in a criminal proceeding, if it
appears to the court that the defendant is a child, this chapter shall
immediately become applicable, and the court shall forthwith halt
further criminal proceedings, and where appropriate, transfer the
case to the division or a judge of the court assigned to conduct
juvenile hearings,.... If it appears to the court in a criminal
proceeding charging murder, that the defendant is a child, the case

The Commonwealth points to other authority for the proposition that *all* transfer orders are interlocutory, and, therefore, the current appeal is timely. The most significant of the cases cited by the Commonwealth is *Commonwealth v. Pyle,* 462 Pa. 613, 342 A.2d 101 (1975). Since not only the issue of whether a transfer order is interlocutory but also the issue of whether such an order is "jurisdictional" are affected by *Pyle, supra,* an in-depth review of the case is required. Our Supreme Court's decision in *Pyle, supra,* specifically footnote 4, *Id.,* 342 A.2d at 103 n. 4, has been cited by the Supreme Court and this court for the general proposition that the issue of certification from the criminal division to the juvenile division is jurisdictional and therefore not waivable. *See, Moyer,* 497 Pa. 645, 444 A.2d at 102; *Leatherbury,* 390 Pa.Super. 561, 568 A.2d at 1315; *Zoller,* 345 Pa.Super. 354, 498 A.2d at 438.[4]

In *Pyle, supra,* the juvenile was charged with murder and, thus, he was subject to prosecution before the criminal division of the court. He then petitioned the court to transfer his case to the juvenile division of the Chester County Court of Common Pleas. However, before his transfer hearing was held, the additional, related charge of theft was filed in the juvenile division, and the Commonwealth moved to have the theft charge transferred to the criminal division for a consolidated prosecution. The court then ruled that the transfer hearing and subsequent decision would apply equally to both charges, i.e., if the murder charge remained in the criminal division, then the theft charge would be transferred to the criminal division. Following a hearing, the court determined that the

may similarly be transferred and the provisions of this chapter applied. In determining whether to transfer a case charging murder, the court shall apply the criteria in section 6355(a)(4)(iii)(A) (relating to transfer to criminal proceedings). However, the child shall be required to show the court that the child is amenable to treatment, supervision or rehabilitation as a juvenile by meeting the criteria listed in section 6355(a)(4)(iii)(A)....

4. We note that all of these cases involve a minor who is appealing his criminal conviction, i.e., the minor's petition for transfer from the criminal division to the juvenile division was *denied.* Importantly, our Supreme Court has *never* addressed procedural facts similar to those herein, and our high court has *never* specifically held that an order which grants the transfer of a juvenile who is charged with murder to juvenile court is interlocutory.

juvenile was not amenable for treatment under the provisions of the Juvenile Act, and both charges were set for prosecution in criminal court. The juvenile pleaded guilty to both charges, and he was sentenced. Subsequently, the juvenile appealed the propriety of the order denying transfer of the murder charge to juvenile court and granting transfer of the theft charge to criminal court.

In *Pyle, supra,* our high court first had to resolve the issue of whether the juvenile could appeal the two separate, but related, transfer decisions, given the fact that he pleaded guilty to the crimes. In footnote 4, our Supreme Court stated:

> Absent unusual circumstances, a guilty plea constitutes a waiver of any non-jurisdictional defects or defenses. *Commonwealth ex rel. Bostic v. Cavell,* 424 Pa. 573, 576, 227 A.2d 662, 664 (1967); *Commonwealth ex rel. Kerekes v. Maroney,* 423 Pa. 337, 341 n. 2, 223 A.2d 699, 701 n. 2 (1966). However, since one of the prime purposes of the Juvenile Act is to spare from adult punishment certain youths whose behavior would necessarily render them *guilty* of adult crimes (including in some instances, the crime of murder) and since the decision to, or not to transfer is interlocutory—11 P.S. 50–325(f)—and thus only appealable after sentencing (*see Commonwealth v. Ray,* 448 Pa. 307, 292 A.2d 410 (1972); *Commonwealth v. Lockhart,* 220 Pa.Super. 421, 289 A.2d 248 (1972)) we find the instant challenge to be properly preserved.

*Pyle,* 462 Pa. 617, 342 A.2d at 103 n. 4 [5]

As previously stated, the afore-quoted footnote has been summarily cited (without discussion or analysis) by our Su-

5. In *Pyle, supra,* 11 P.S. 50–325(f) was applied by our Supreme Court. That section, now repealed, was identical to 42 Pa.C.S.A. § 6355(f) which expressly applies to *transfers to criminal proceedings* and provides that decisions "to transfer or not to transfer the case are interlocutory." Given the fact that two independent transfer decisions were made, one of which (the theft charge) was specifically governed by prior § 50–325(f), we raise the question of whether our Supreme Court actually intended that section also to apply with equal force to transfers from the criminal to the juvenile division of the court. This question is especially pertinent since the Legislature has not specifically labeled such orders as "interlocutory."

preme Court in *Moyer, supra,* and by this court in *Leatherbury, supra,* and *Zoller, supra, inter alia,* for the general proposition that "this issue of certification is jurisdictional and therefore not waivable." *Moyer,* 497 Pa. 646, 444 A.2d at 103. The Commonwealth submits that since transfer orders are "interlocutory" and "jurisdictional", its failure to appeal the transfer order immediately cannot act as a waiver of the issue.

While we agree with the Commonwealth that our Supreme Court has given transfer orders the generic labels of "interlocutory" and "jurisdictional", we do not agree that we must blindly apply those terms (in their most expansive and comprehensive meanings) to the transfer order *sub judice,* the type of which our Supreme Court has never previously considered. We agree that the transfer order in question is "interlocutory". However, an appeal by the Commonwealth from an order transferring a minor's case to juvenile court *after* the juvenile adjudication presents double jeopardy implications which are clearly not present when the minor is the party who appeals the propriety of a transfer order. It makes sense that an order which *denies* a juvenile's request for transfer from the criminal division to the juvenile division such as those in *Pyle, supra, Moyer, supra, Leatherbury, supra* and *Zoller, supra,* is "interlocutory" and not appealable until after judgment of sentence is entered. In that situation, it is the juvenile who later asks the court to reconsider the denial of transfer, in effect, requesting a second prosecution as a juvenile, and, consequently, double jeopardy protections are not implicated. *See, Forman v. United States,* 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960), *rehearing denied,* 362 U.S. 937, 80 S.Ct. 749, 4 L.Ed.2d 751, *overruled on other grounds, United States v. Goodwin,* 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) (defendant who has succeeded in having his conviction set aside impliedly waives any objection to being retried on the charge of which he was originally convicted); *In re Matter of Shanea J.,* 150 Cal.App.3d 831, 842, 198 Cal.Rptr. 228, 235 (1984) (a defendant's successful effort to set aside the

verdict by means of appeal is a waiver of his constitutional right to object to being placed again in jeopardy).[6]

■ The current facts are clearly distinguishable from those previously considered by the appellate courts of this Commonwealth. Thus, transfer orders like that before us must be treated differently since we are convinced that when the Commonwealth appeals an order transferring prosecution of a minor from the criminal division to the juvenile division *after* a juvenile adjudication and disposition has taken place, double jeopardy protections are implicated. In other words, if the Commonwealth does not immediately appeal the "interlocutory" transfer order which certifies the minor-murder-defendant for juvenile prosecution, it will be precluded by double jeopardy from "re-prosecuting" the juvenile as an adult. *See,* discussion, *infra.* An order which transfers the case from criminal to juvenile prosecution such as the one *sub judice* must be treated differently from its converse. Therefore, we hold that such a transfer order is an interlocutory order *which is immediately appealable,* since such an order terminates the "criminal" prosecution of the juvenile. *Cf., Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985); Pa.R.App.P. 311(d), Interlocutory Appeal as of Right ("[T]he Commonwealth may take an appeal as of right from an order that does not end the entire case but where the Commonwealth asserts that the order will terminate or substantially handicap the prosecution.").

A similar procedure to that currently advocated was employed by the Commonwealth in the case of *Commonwealth v. Madden,* 342 Pa.Super. 120, 492 A.2d 420 (1985), wherein the

6. Likewise, it is logical to label an order granting the Commonwealth's petition to transfer a juvenile's prosecution from the juvenile division to the criminal division as "interlocutory" and not appealable until judgment of sentence is entered. In that situation, it is, once again, the juvenile who is requesting a "second" prosecution in the juvenile division. *See, Greiner, supra; Sanders, supra; Deppeller, supra; Lux, supra; Stokes, supra.*

 We note, however, that the Commonwealth has never appealed an order denying transfer from the juvenile division to the criminal division. And, we question if such an appeal would not present the same double jeopardy problem as that faced herein.

prosecution was permitted to appeal the propriety of an interlocutory transfer order before any determination on the merits by either the juvenile or criminal division of the court of common pleas had taken place.

In *Madden, supra,* the Commonwealth was successful in having the juvenile's case transferred from the juvenile division. Once in the criminal division, the juvenile filed his "petition for decertification" which the criminal division judge granted. The Commonwealth *immediately* appealed, alleging the "decertification" hearing before the criminal division was improper. Citing *Commonwealth v. Pitt,* 254 Pa.Super. 159, 162, 385 A.2d 574, 575 (1978), we restated: "Once the matter was certified to criminal court the case could not be transferred back to juvenile court." Further, we noted that an order certifying a juvenile case for criminal prosecution is interlocutory, 42 Pa.C.S.A. § 6355(f), and a judge of co-equal jurisdiction could not pass upon the issue for a second time. *Madden,* 342 Pa.Super. 124, 492 A.2d at 423. Although we did not specifically address the issue, we *sub silentio* permitted an interlocutory appeal as of right from an order which effectively terminated criminal prosecution of the minor.

In *In the Interest of George S.,* 286 Pa.Super. 217, 428 A.2d 650 (1981), the juvenile's case was transferred to the criminal division. Following the transfer, the juvenile filed a pre-trial motion to dismiss on the ground that he would be twice placed in jeopardy by adult criminal proceedings. The trial court agreed with the double jeopardy argument, revoked the transfer order and remanded the case to the juvenile division for disposition. Back before the juvenile division, the juvenile again requested his case be dismissed on double jeopardy ground, but the juvenile court denied the request. The Commonwealth requested disposition, but the juvenile immediately appealed to this court.

On appeal, the minor argued that he was twice placed in jeopardy. He claimed was placed in jeopardy at his transfer hearing in juvenile court and again when his case went before the criminal court. The Commonwealth argued that the order appealed from was interlocutory and asked us to quash the

appeal. In response to the Commonwealth, we held that the order denying the minor's motion to dismiss on double jeopardy ground was immediately appealable. *See, George S.*, 428 A.2d at 651, *citing, Abney v. United States*, 431 U.S. 651, 661–62, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651, 661–62 (1977). We also found that since no adjudication of the juvenile's case had occurred prior to transfer to the criminal division, jeopardy did not attach in the juvenile division and *Breed v. Jones, supra*, did not apply. This case also supports the notion that an order transferring prosecution of a minor from the criminal to juvenile division is an interlocutory order which is immediately appealable because of the double jeopardy implications. *Cf., Abney v. United States*, 431 U.S. at 661–62, 97 S.Ct. at 2041 (if double jeopardy is to be avoided, a double jeopardy challenge must be reviewed before that subsequent exposure occurs).[7]

 Since issues of jurisdiction are generally not waivable and our high court has employed the term "jurisdictional" to describe transfer orders, our analysis of whether the Commonwealth has filed a timely appeal is not complete. In addition, analysis of the intended use of the term "jurisdiction" is warranted because of the Commonwealth's response to the appellee's argument that double jeopardy bars his prosecution in the criminal division of the court of common pleas. The Commonwealth contends that if the lower court committed a gross abuse of discretion when transferring appellee's case to the juvenile division, then the "juvenile court" lacked jurisdiction over appellee and the constitutional prohibition against double jeopardy affords appellee no protection.

 We begin our discussion of the meaning of "jurisdiction" in the present context with an insightful quote from of the Court of Appeals of Georgia, which, when addressing a

7. We note that rather than remand the case for trial in the criminal division, as would have been the proper procedure, we affirmed the applicability of the Juvenile Act and remanded the case for disposition in the juvenile division of the court. In *Madden*, 342 Pa.Super. 126, 492 A.2d at 424–426, we previously criticized the *George S.* panel for reviewing the merits of the transfer order which was not at issue.

similar situation to that before us in *K.G.W. v. Georgia*, 140 Ga.App. 571, 574, 231 S.E.2d 421, 424 (1976), stated: "In our use of the term, 'its jurisdiction' we are aware that it is a term 'of comprehensive and large import, having different meanings, dependent on the connection in which it is found.' 50 C.J.S. Jurisdiction 1090."[8] Herein, we posit whether our Supreme Court labeled transfer orders "jurisdictional" merely to permit a minor-defendant, in unique procedural circumstances, to appeal an otherwise waived issue. *See, e.g., Pyle, supra.* Or, did our high court truly intend a more "comprehensive" definition? To the extent that *Pyle, supra* and *Moyer, supra,* are applicable to the unique procedural facts of this case, we opine that our high court intended for orders which deny a minor's petition for transfer from the criminal division of the court to the juvenile division to be "jurisdictional" *only* in the sense that the issue cannot be waived by the juvenile. To rule otherwise, we believe would employ an overly expansive definition of "jurisdiction" and would run afoul of the double jeopardy protections of the United States and Pennsylvania Constitutions.[9]

**8.** Black's Law Dictionary, 5th Ed., p. 766, in part, defines "jurisdiction" as follows:

The word is a term of large and comprehensive import, and embraces every kind of judicial action. *Federal Land Bank of Louisville, Ky. v. Crombie,* 258 Ky. 383, 80 S.W.2d 39, 40. It is the authority by which courts and judicial officers take cognizance of and decide cases. *Board of Trustees of Fireman's Relief and Pension Fund of City of Marietta v. Brooks,* 179 Okl. 600, 67 P.2d 4, 6; *State v. True,* Me., 330 A.2d 787. The legal right by which judges exercise their authority. *Max Ams, Inc. v. Barker,* 293 Ky. 698, 170 S.W.2d 45, 48. It exists when court has cognizance of class of cases involved, proper parties are present, and point to be decided is within the power of the court. *United Cemeteries Co. v. Strother,* 342 Mo. 1155, 119 S.W.2d 762, 765; *Harder v. Johnson,* 147 Kan. 440, 76 P.2d 763, 764. Power and authority of a court to hear and determine a judicial proceeding. *In re De Camillis' Estate,* 66 Misc.2d 882, 322 N.Y.S.2d 551, 556. The right and power of a court to adjudicate concerning the subject matter in a given case. *Biddinger v. Fletcher,* 224 Ga. 501, 162 S.E.2d 414, 416.

**9.** We note that it is the Supreme Court's function to expound the Commonwealth's jurisdictional rules. *Stephens v. Zant,* 631 F.2d 397, 400 (5th Cir.1980), *reversed on other grounds,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983); *Daniel v. Warden, State Correction Inst. at*

We recognize that in *Moyer,* 497 Pa. 646, 444 A.2d at 103, our Supreme Court cited *Pyle,* 342 A.2d at 101 n. 4, stating: "[T]his issue of certification is jurisdictional and therefore not waivable." However, it is certainly arguable, from a strict reading of *Pyle,* 462 Pa. 617, 342 A.2d at 101 n. 4, that such an interpretation is incorrect. Rather, it is plausible, if not more consistent with the express language of *Pyle, supra,* to interpret footnote 4 to mean that the propriety of the order which denied transfer from the criminal division to the juvenile division raised a "non-jurisdictional" question which would ordinarily have been waived by the defendant's guilty plea, but which was instead not waived because of "unusual circumstances", i.e., the procedural posture of the case and its relationship to the Juvenile Act.

Further support for limiting the perimeter of the definition of "jurisdiction" as it applies to transfer orders is found in several places, the first of which is Article V, § 5 of Pennsylvania's Constitution. Article V, § 5 of our state Constitution, provides: "There shall be one court of common pleas for each judicial district (a) having such divisions and consisting of such number of judges as shall be provided by law, one of whom shall be president judge; and (b) having unlimited original jurisdiction in all cases except as may be provided by law."

Second, our Legislature recognized that the juvenile division of the court of common pleas *is not a separate court* with separate subject matter jurisdiction when it stated in the Official Comment of 42 Pa.C.S.A. § 6301: "The above designation [Juvenile Act] was adopted rather than the more usual 'Juvenile Court Act' in view of the recent consolidation of original jurisdiction solely in the several courts of common pleas by Section 5 of Article V of the Pennsylvania Constitution, as amended 1968. See Comment to Section 2(8) [42 Pa.C.S.A. § 6302–definition of 'court'], *infra.*"

Third, § 952 of the Judicial Code, 42 Pa.C.S.A. § 952, provides:

*Huntingdon, Pa.,* 794 F.2d 880, 883 (3rd Cir.1986); *accord, Hortonville School District No. 1 v. Hortonville Educational Assn.,* 426 U.S. 482, 488, 96 S.Ct. 2308, 2312, 49 L.Ed.2d 1, 6–7 (1976).

The divisions of a court of common pleas are administrative units composed of those judges of the court responsible for the transaction of specified classes of business of the court. In a court of common pleas having two or more divisions each division of the court is vested with the full jurisdiction of the whole court, but the business of the court may be allocated among the divisions of the court by or pursuant to general rules.

In applying 42 Pa.C.S.A. § 952, our Supreme Court, in *Commonwealth v. Wadzinski*, 485 Pa. 247, 253–55, 401 A.2d 1129, 1132 (1978), *on remand*, 266 Pa.Super. 56, 403 A.2d 91 (1979), *reversed on other grounds*, 492 Pa. 35, 422 A.2d 124 (1980), stated:

... Since January 1, 1969, there has been only one court of original jurisdiction which is a court of record, *viz.*, the court of common pleas as it was reconstituted by the new Article V [of the Pennsylvania Constitution]. There is no longer a court of quarter sessions. Thus whether a party aggrieved by a minor court's summary conviction wishes to proceed either by petitioning for certiorari or by taking a general appeal, he seeks his remedy in the court of common pleas; jurisdiction restraints upon the former court of common pleas under the old system no longer exist. The court of common pleas, as reconstituted, possesses the jurisdiction of the former courts of common pleas, courts of quarter sessions, courts of oyer and terminer, orphans' courts, and juvenile courts. One of the purposes of the unified court is, of course, to simplify procedure and remove archaisms from the judicial system. A case may not be dismissed because brought in the wrong court; if the matter is justiciable, there is jurisdiction in the court of common pleas to hear it, and in a multi-division court the remedy for bringing the case in the wrong division is not a dismissal, but a transfer of the matter to the correct division.

*Wadzinski*, 485 Pa. 254, 401 A.2d at 1132.

Clearly, neither our state Constitution nor our statutes create a separate "juvenile court" with separate subject matter jurisdiction. Rather, we have one court of common pleas

for each judicial district with each division therein being vested with the jurisdiction of the whole court. 42 Pa.C.S.A. § 952; *see also, Guerin v. Guerin,* 296 Pa.Super. 400, 442 A.2d 1112 (1982) (Since each division of a court of common pleas is vested with the jurisdiction of the whole court, any division would have jurisdiction over assumpsit action brought by former wife against former husband to enforce private support agreement, regardless of whether it was the division of the court to which such matters would be routinely assigned).[10]

Herein, we have determined that an order which transfers a minor's case from the criminal division of the court to the juvenile division is an "interlocutory" order, but one which is immediately appealable by the Commonwealth, lest it run afoul of the double jeopardy clause. Further, we have determined that transfer orders are "jurisdictional" only to the extent that the propriety of such an order is not a waivable issue by a minor-defendant. Thus, we find that the Common-

---

10. In *Balter v. Balter,* 284 Pa.Super. 350, 356, 425 A.2d 1138, 1141 (1981), a two-judge majority of a panel of this court stated:

... Clearly, it would be anomalous to suggest that divisional assignments among the court of common pleas could properly be characterized as relating to anything other than subject matter jurisdiction. *See, e.g., Brumm v. Pittsburgh Nat'l Bank,* 213 Pa.Super. 443, 249 A.2d 916 (1968). To hold otherwise, and deny appellate review no matter how patently erroneous a plaintiff's selection of division may be, would be tantamount to obliterating the broad areas of law to which each division of the court of common pleas is to direct its attention. *See generally, Posner v. Sheridan,* 451 Pa. 51, 299 A.2d 309 (1973).

However, in *Hollman v. Hollman,* 347 Pa.Super. 289, 500 A.2d 837 (1985) (*en banc*), Judge Johnson, in his Concurring and Dissenting Opinion, which was joined by President Judge Spaeth, and Judges Cavanaugh, Rowley and McEwen, rejected that statement regarding subject matter jurisdiction set forth in *Balter, supra.* The majority, as to the issue of subject matter jurisdiction, looked to prior Supreme Court authority which the *Balter* panel questioned and held that the issue of whether a case is commenced in the proper division of a court of common pleas "*is not one of jurisdiction, but one of common pleas court administration. Posner v. Sheridan,* 451 Pa. 51, [55], 299 A.2d 309, [311] (1973). *Accord, Commonwealth ex. rel. Stein v. Stein,* 487 Pa. 1, 406 A.2d 1381 (1979); *Binder v. Miller,* [456 Pa. 11, 317 A.2d 304 (1974)]." *Hollman,* 347 Pa. 320, 500 A.2d at 853. *See also, Balter,* 284 Pa.Super. 360–364, 425 A.2d at 1143–1145 (Dissenting Opinion by Cavanaugh, J.). Thus, a majority of this court, sitting *en banc,* has held that division assignment of cases is not a question of jurisdiction.

wealth's appeal is untimely. However, given the unique procedural posture of this case, we will address the issue of whether appellee would be placed twice in jeopardy if the Commonwealth was permitted to prosecute appellee in the criminal division of the court of common pleas.

In Pennsylvania, we employ a unitary analysis of our state and federal double jeopardy clauses, since the protections afforded by each are identical. *Commonwealth v. Sojourner*, 513 Pa. 36, 45 n. 6, 518 A.2d 1145, 1149 n. 6 (1986); *Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313 (1980). The protections afforded by the double jeopardy clauses fall within three categories: 1) Protection against a second prosecution for the same offense after an acquittal; 2) Protection against a second prosecution for the same offense after a conviction; and 3) Protection against multiple punishments for the same offense. *Commonwealth v. Frisbie*, 506 Pa. 461, 465–66, 485 A.2d 1098, 1100 (1984), *citing Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981); *Commonwealth v. Grazier*, 481 Pa. 622, 630–631, 393 A.2d 335, 339 (1978); *In the Interest of R.R.*, 317 Pa.Super. 334, 341–42, 464 A.2d 348, 352 (1983). As stated in *Commonwealth v. Mills*, 447 Pa. 163, 169, 286 A.2d 638, 641 (1971), "The judiciary views these rules as expressions of self-evident moral precepts: It is wrong to retry a man for a crime of which he previously has been found innocent, wrong to harass him with vexatious prosecution, and wrong to punish him twice for the same offense."

The protections of the double jeopardy clause of the United States Constitution were made applicable to juvenile proceedings by the United States Supreme Court in *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Therein, a minor was adjudicated delinquent based on a violation of California criminal statutes. The juvenile court then was asked by the state to determine whether the juvenile was fit for treatment as a juvenile, as was the procedure under California's Welfare and Institutions Code. The juvenile court found that the minor was unfit for treatment as a juvenile, and the case was transferred to criminal court for prosecution.

The juvenile appealed, alleging that a trial in criminal court would place him twice in jeopardy.

On appeal before the Supreme Court, all parties agreed that the minor was put in jeopardy at the time of his juvenile adjudication, and, after analysis, the court agreed. *Breed,* 421 U.S. at 523–33, 95 S.Ct. at 1785–1787. However, the state argued that the double jeopardy clause was not violated because: 1) An adult prosecution of the minor would not violate the policies which underlie the double jeopardy clause, or, alternatively, the criminal prosecution should be permitted on the same basis that retrial is permitted after a defendant has obtained a reversal of his conviction; and 2) The court should avoid application of double jeopardy clause because if applied, it would diminish the flexibility and informality of juvenile court proceedings without conferring any additional due process benefits. *Breed,* 421 U.S. at 531–33, 95 S.Ct. at 1787.

In response to the state's arguments, the Supreme Court held that the double jeopardy clause was undoubtedly violated because the minor would be subjected to multiple prosecutions for the same offense. Specifically, the Court stated: "Respondent was subjected to the burden of trials for the same offense; he was twice put to the task of marshalling his resources against those of the State, twice subjected to the 'heavy personal strain' which such an experience represents." *Breed,* 421 U.S. at 533, 95 S.Ct. at 1787. The Court also concluded that protection of the unique function and operation of the juvenile court system did not warrant departure from the fundamental protections of double jeopardy, especially where a modification of the procedures employed, i.e., convening the transfer hearing in juvenile court prior to the adjudication, would avoid the jeopardy implications. *Breed,* 421 U.S. at 535–39, 95 S.Ct. at 1789–90.

The Commonwealth contends that the double jeopardy protections outlined in *Breed, supra,* are inapplicable to appellee because the lower court committed a gross abuse of discretion when transferring his case to the juvenile division

and, thus, the "juvenile court" lacked jurisdiction over appellee. Certainly, there exists a line of cases which holds that jeopardy attaches only in proceedings conducted before a court with subject matter jurisdiction. *See, United States v. Ball,* 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300, 302 (1896) (sets forth the general proposition that jeopardy only attaches in proceedings conducted before a tribunal having the requisite subject matter jurisdiction); *Grafton v. United States,* 206 U.S. 333, 345, 27 S.Ct. 749, 751, 51 L.Ed. 1084, 1088 (1907) (same); *Commonwealth v. Keenan,* 365 Pa.Super. 437, 530 A.2d 90 (1987) (reprosecution on same charges in county with subject matter jurisdiction was not barred by double jeopardy following setting aside of jury verdict and granting of new trial for lack of subject matter jurisdiction in original county on defendant's motion). However, as we have already stated herein, a transfer order from criminal court to juvenile court is not "jurisdictional" in the sense that the juvenile court did not have subject matter jurisdiction over the minor. Even if the transfer decision was erroneous, the juvenile division of the court of common pleas would have jurisdiction over the minor. 42 Pa.C.S.A. § 952 ("each division of the court is vested with the full jurisdiction of the whole court").

Quite simply the line of cases beginning with *United States v. Ball, supra,* and *Grafton v. United States, supra,* are inapposite to the extent that the Commonwealth would argue their relevance today.[11] Those cases deal with the reprosecution of a defendant in a court of co-extensive jurisdiction after an acquittal in the other court. Moreover, *Ball, supra,* actually supports our decision:

... An acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void,

**11.** *Keenan, supra,* is also inapposite, since it relates to a true question of jurisdiction—whether the crime was prosecuted in the proper judicial district, i.e., proper court of common pleas, not whether it was brought in the correct division of a particular court. Moreover, it was the defendant who obtained a reversal of his first conviction on the basis of improper jurisdiction. Therefore, double jeopardy protections did not preclude a second prosecution in the correct county.

and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense. *Com. v. Peters*, 12 Metc. (Mass.) 387; 2 Hawk. P.C. c. 35, § 3; 1 Bish. Cr.Law, § 1028. But, *although the indictment was fatally defective, yet, if the court had jurisdiction of the cause and of the party, its judgment is not void, but only voidable by writ of error, and until so avoided cannot be collaterally impeached.* If a judgment is upon a verdict of guilty, and unreversed, it stands good, and warrants the punishment of the defendant accordingly, and he could not be discharged by writ of habeas corpus. *Ex parte Parks*, 93 U.S. 18 [23 L.Ed. 787 (1876) ]. (Emphasis added.)

In the present case, the decision to transfer appellee from criminal court to juvenile court may be "fatally defective", yet, the juvenile division of the Court of Common Pleas of Erie County had jurisdiction over the minor and the delinquency petition. Thus, assuming the transfer was improper, the adjudication of delinquency is merely voidable, not void *ab initio*. Thus, jeopardy attached in appellee's juvenile proceedings, and the Commonwealth cannot seek to reprosecute the minor as an adult.

We note that those states which have addressed similar arguments against the applicability of the double jeopardy clause have reached differing results. For example, in *In the Matter of D.M.*, 611 S.W.2d 880 (Tx.Ct.Civ.App.1980), an eighteen-year-old defendant appealed from an order of the juvenile court transferring his case for criminal prosecution. Originally, the defendant had been tried and convicted of murder in criminal court. However, after trial, counsel moved for abatement of the criminal proceeding, because the criminal court lacked jurisdiction since the defendant was only sixteen at the time of the offense. The motion was granted, and the prosecution petitioned the juvenile court to adjudicate the defendant delinquent for the same conduct which gave rise to the prior criminal prosecution. Prior to any adjudication, the prosecution petitioned the juvenile court to transfer the case back to criminal court. The juvenile court decided to transfer the case for criminal prosecution. The defendant immediately

appealed, alleging, *inter alia*, that double jeopardy barred his reprosecution as an adult.

Based on those facts, the Court of Civil Appeals of Texas ruled that the defendant was not put in jeopardy at the original criminal trial because the criminal court had no subject matter jurisdiction over the defendant.[12] If the court had no jurisdiction, all proceedings before it were absolutely void and, therefore, no bar to subsequent proceeding in a court which has jurisdiction. *Matter of D.M.*, 611 S.W.2d at 883. While this case runs contrary to our holding, we note that it was the minor who originally requested his criminal conviction to be vacated; thus, it is arguable that the minor had waived his double jeopardy claim. *See, Forman, supra; Goodwin, supra.*

California has reached a similar result to that of Texas in the case of *In re the Matter of Shanea J.*, 150 Cal.App.3d 831, 198 Cal.Rptr. 228 (1984). Therein, three separate and unrelated petitions alleging delinquency were filed in the juvenile court. As to the first and the third in time, the prosecution moved to have the juvenile's case certified to criminal court, and the juvenile court found that the defendant was "unfit to be tried as a juvenile". Adult criminal prosecution was initiated as to those petitions. However, the prosecution never requested the charges set forth in the second delinquency petition be transferred for criminal prosecution. An adjudication hearing was held in juvenile court, and the juvenile was determined to be delinquent. The juvenile then appealed, and the California court *sua sponte* raised the issue of whether the juvenile court had jurisdiction over the case, in light of *In re Dennis J.*, 72 Cal.App.3d 755, 140 Cal.Rptr. 463 (1977) and *People v. Superior Court (Woodfin)*, 129 Cal.App.3d 970, 182 Cal.Rptr. 787 (1982). Those cases held that once a minor has been found unfit to be tried as a juvenile for one offense, the juvenile court system is thereafter without jurisdiction to proceed on any other charge pending against the minor.

12. Since the defendant was actually sixteen at the time of the murder, Texas law vested original "jurisdiction" in the juvenile court.

Given the fact that the second delinquency petition was sandwiched between two others for which the minor was found to be unfit for juvenile disposition, the California court found that the juvenile court did not have jurisdiction of the minor at the time of the adjudication of delinquency and subsequent disposition. *Shanea J.,* 198 Cal.Rptr. at 233. Although the court found that jurisdiction was lacking, it did not adopt that as the sole reason why double jeopardy was avoided. *Shanea J.,* 198 Cal.Rptr. at 234. Rather, the court focused on the fact that it was the minor who appealed his juvenile court adjudication, and the state was not seeking multiple prosecutions of the minor. *Shanea J.,* 198 Cal.Rptr. at 234–235. Significantly, the California court noted that it would not adopt a "broad pronouncement" which provided that lack of jurisdiction would always bar the application of double jeopardy protection, and it recognized that situations may exist when a prosecution would violate double jeopardy, despite lack of jurisdiction during the first proceeding. *Shanea J.,* 198 Cal.Rptr. at 844 n. 12.

On the other hand, the California Supreme Court, in the case of *In re Bryan,* 16 Cal.3d 782, 129 Cal.Rptr. 293, 548 P.2d 693 (1976), reached a result strikingly similar to that reached today. Therein, a minor was found fit to be tried as a juvenile, and the petition alleging murder and assault was sustained. He was sentenced to the California Youth Authority, but that agency refused to accept his commitment. A second fitness hearing was held, and this time, the minor was found to be *unfit* for treatment as a minor. He was then tried as an adult in criminal court. On appeal, the California Supreme Court held that the minor's subsequent trial as an adult violated the prohibition against double jeopardy. Similarly, we are convinced that, if appellee was tried in criminal court as an adult, the prohibition against double jeopardy would be violated.[13]

13. We note that in *Bryan, supra,* the California Supreme Court was not asked to review the merits of an exception to the double jeopardy clause such as lack of jurisdiction, one of the reasons employed in *Shanea J., supra,* to avoid the application of the double jeopardy clause.

Other states have reached similar results to those herein. In *McCarver v. Florida*, 379 So.2d 979 (1980), the District Court of Appeals of Florida held that a juvenile court had jurisdiction when it requested and accepted a juvenile's guilty plea at a detainer hearing, despite the fact that the juvenile was charged with a felony punishable by life imprisonment and the fourteen-day period in which the state could present the matter to a grand jury for criminal prosecution had not expired. Thus, even though the juvenile court erroneously accepted the minor's plea, i.e., had no authority to do so before the fourteen day period had expired, jeopardy nevertheless attached. *See also, Smith v. Florida*, 316 So.2d 552 (Fla. 1975).[14]

■ The Mississippi Supreme Court has held: "Once an adjudicatory hearing has been held, any further adjudicatory action on the part of either a Youth Court or a Circuit Court will constitute double jeopardy." *Walls v. State*, 326 So.2d

**14.** We note that in *Lisak v. Florida*, 433 So.2d 487 (Fla.1983), the Supreme Court of Florida overruled *McCarver, supra*. In *Lisak, supra*, the juvenile court also accepted the minor's guilty plea prior to the expiration of the period within which a criminal indictment could be handed down. The court held that the juvenile court lacked jurisdiction to accept the plea during the indictment period. Thus, jeopardy did not attach, and the minor could be indicted and tried in criminal court. *Lisak*, 433 So.2d at 489.

While we acknowledge that such a holding conflicts with our decision today, we note that the Dissenting Opinion of Justice Boyd of the Florida Supreme Court is in complete agreement with our resolution. Therein, Justice Boyd stated:

Jurisdiction is the lawfully existing power of a court to hear and determine a case. *State v. King*, 426 So.2d 12 (Fla.1982); *Malone v. Meres*, 91 Fla. 709, 109 So. 677 (1926). Jurisdiction necessarily embraces the power to determine a cause erroneously. *State ex. rel. Reynolds Construction Co. v. Hendry*, 37 So.2d 904 (Fla.1948). It may be true that the trial court erroneously disregarded or misinterpreted the legislature's clear directive that no adjudicatory hearing be held within twenty-one days. But this error did not deprive the court of jurisdiction.

*Lisak*, 433 So.2d at 491 (Dissenting Opinion of Boyd, J.).

Similarly, the fact that the criminal division of the court of common pleas may have erroneously divested itself of "jurisdiction" to try appellee did not prevent the juvenile division from obtaining authority to adjudicate the delinquency petition. In other words, we are convinced that jeopardy attached at the time of juvenile adjudication, despite the fact that the case may have been incorrectly transferred.

322, 325 (Miss.1976); *In the Interest of W.R.A.*, 481 So.2d 280, 288 (Miss.1985). Again, the rule is well nigh absolute: once a juvenile adjudication has occurred, subsequent criminal prosecution as an adult will violate the double jeopardy clause.

In *K.G.W. v. Georgia, supra,* a minor was arrested on a delinquency petition and, following his arrest, he made an incriminating statement to the police concerning the death of his parents. A preliminary hearing was held, and the minor was bound over for trial in criminal court for the two murders. The minor then moved the criminal court to transfer his case to juvenile court because the juvenile court had first assumed jurisdiction over the matter when the delinquency petition was issued, and the juvenile court had never transferred the matter to the criminal court. The criminal court then transferred the case to juvenile court.

Once in juvenile court, the court held a hearing to decide whether to retain jurisdiction or transfer the case to criminal court. The state then moved the *criminal* court to "withdraw and vacate" its previous order on two grounds: 1) Even though the juvenile court first assumed jurisdiction over the minor, if the juvenile petition cites a different offense than that for which the minor is indicted, the criminal court has the right to proceed on the indicted offense, *Relyea v. State,* 236 Ga. 299, 223 S.E.2d 638 (1976); and 2) the juvenile court was improperly constituted, since the appointed judge was not a resident of the correct county as required under Georgia law.[15] The criminal court then vacated its prior order and directed the case to be tried before it. The minor filed an immediate interlocutory appeal which argued that the juvenile court should have jurisdiction over the matter.

Based on the foregoing procedure, the Georgia Court of Appeals ruled that since the criminal court had transferred jurisdiction of the case to the juvenile court, albeit an errone-

15. The minor had originally requested disqualification of the juvenile court judge since he was the former law partner of the minor's counsel. A judge from the adjoining county was appointed, despite the fact that he was not a resident of the county in which the minor was to be tried, as was required by law.

ous transfer, the juvenile court had the requisite jurisdiction to dispose of the matter. *K.G.W.*, 231 S.E.2d at 423–424. The court then noted that:

> ... If the state contends that a superior court can revoke its transfer of jurisdiction after the juvenile court has acted thereon, then why should not the juvenile court have the same option of revoking its transfer of jurisdiction after the superior court has begun trial of the defendant? The obvious answer is double jeopardy. *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). In the instant case, double jeopardy is not an issue as the juvenile court was improperly constituted—thus it was without jurisdiction and jeopardy never attached.

The implications of this case are clear. A transfer of "jurisdiction" by the criminal court to the juvenile court, or *visa versa*—even if erroneous—is sufficient to vest "jurisdiction" in the other court for the purposes of double jeopardy. Such is precisely our holding today.[16]

In deciding that the transfer order before us is not "jurisdictional" in the sense argued by the Commonwealth, we have considered whether there is an intellectual distinction which would warrant granting double jeopardy protections to the minor in *Breed v. Jones, supra*, while denying such protections to appellee, and we can find none. Herein, we are asked to find that the juvenile court was without jurisdiction to adjudicate appellee delinquent, due to an erroneous transfer, so that the Commonwealth may prosecute appellee criminally. In *Breed v. Jones, supra*, following the minor's delinquency adjudication, the juvenile court found that the minor was unfit for treatment as a juvenile and transferred the case for criminal prosecution. In either situation, the minors face the multiple prosecutions for the same offense, and appellee is presented with the same "dilemma" which moved the Supreme Court to write:

---

**16.** To the extent that jeopardy had not attached in juvenile proceedings in *K.G.W., supra*, we agree with the Georgia court's decision. The juvenile court was improperly constituted because the judge was not from the correct county, and, thus, this case is in accord with our prior decision of *Keenan, supra*.

... What concerns us here is the dilemma that the possibility of transfer after an adjudicatory hearing presents for a juvenile, a dilemma to which the Court of Appeals alluded. See *supra*, [421 U.S. at 526–27, 95 S.Ct.] at 1784. Because of that possibility, a juvenile, thought to be the beneficiary of special consideration, may in fact suffer substantial disadvantages. If he appears uncooperative, he runs the risk of an adverse adjudication, as well as of an unfavorable dispositional recommendation. If, on the other hand, he is cooperative, he runs the risk of prejudicing his chances in adult court if transfer is ordered. We regard a procedure that results in such a dilemma as at odds with the goal that, to the extent fundamental fairness permits, adjudicatory hearings be informal and nonadversary. See *In re Gault*, 387 U.S. [1] at 25–27, 87 S.Ct. [1428] at 1442 [18 L.Ed.2d 527 (1967) ]; *In re Winship*, 397 U.S. [358] at 366–367, 90 S.Ct. [1068] at 1074 [25 L.Ed.2d 368 (1970) ]; *McKeiver v. Pennsylvania*, 403 U.S. [528] at 534, 550, 91 S.Ct. [1976] at 1981 [29 L.Ed.2d 647 (1971) ]. Knowledge of the risk of transfer after an adjudicatory hearing can only undermine the potential for informality and cooperation which was intended to be the hallmark of the juvenile-court system. Rather than concerning themselves with the matter at hand, establishing innocence or seeking a disposition best suited to individual correctional needs, the juvenile and his attorney are pressed into a posture of adversary wariness that is conducive to neither. Cf. Kay & Segal, *The Role of the Attorney in Juvenile Court Proceedings: A Non–Polar Approach*, 61 Geo.L.J. 1401 (1973); Carr, *The Effect of the Double Jeopardy Clause on Juvenile Proceedings*, 6 U.Tol.L.Rev. 1, 52–54 (1974).

*Breed v. Jones*, 421 U.S. at 540–41, 95 S.Ct. at 1791 (footnotes omitted).

Clearly, if a minor faces the risk that his transfer from the criminal division of the court of common pleas to the juvenile division will be reversed on appeal *after* his adjudicatory hearing, he faces the same dilemma denounced in *Breed v. Jones, supra*. The very essence of the double jeopardy clause

mandates that criminal prosecution may not follow a juvenile adjudication, even if the transfer from the criminal division of the court to the juvenile division was erroneous. To permit such a procedure to exist would allow the prosecution to use the juvenile proceeding as the penultimate discovery tool, without any corresponding due process benefits to the minor whom the juvenile justice system was designed to assist.

In conclusion, we find that an order which transfers the prosecution of a minor-murder defendant from the criminal division of the court of common pleas to the juvenile division is an "interlocutory" order which is immediately appealable by right. Otherwise, the appeal will come after the juvenile adjudication; jeopardy will have attached; and, prosecution in the criminal division will be prohibited, even if the original transfer decision was erroneous. Although transfer orders have, in general, been called "jurisdictional", we find transfer orders with the same procedural status as the one *sub judice* are *not* jurisdictional in the sense that if the transfer decision was erroneously made by the criminal division judge, jeopardy will not attach during the juvenile proceeding. Rather, transfer orders are "jurisdictional" merely in the sense that a minor cannot waive the issue of the propriety of a transfer order which either certifies his case for criminal prosecution or denied his request for juvenile prosecution. Consequently, we find that the Commonwealth has failed to file its appeal in a timely manner, and, even if said appeal was timely, the double jeopardy protections of the Pennsylvania and United States Constitutions would preclude prosecution of appellee in the criminal division of the Erie County Court of Common Pleas.[17]

Commonwealth's appeal is quashed.

**17.** Although immediate appeal of a transfer order from the criminal division to the juvenile division will eliminate the double jeopardy bar faced by the Commonwealth herein, we alert the Legislature and the legal community that immediate appeal of such orders does create problems related to the application of the Juvenile Act. For example, in the case of a juvenile who is near the age of majority, it *may* have the effect of depriving him of "treatment, supervision or rehabilitation as a juvenile." The Juvenile Act provides for rapid disposition of a juvenile's case so that a "program of supervision, care and rehabilitation" may be initiated as soon as possible. See 42 Pa.C.S.A. § 6301(b)

TAMILIA, J., files a concurring statement.

JOHNSON, J., files a concurring statement in which McEWEN, J., joins.

TAMILIA, Judge, concurring:

I join the majority in its thorough discussion of the issues of transfer, jurisdiction and double jeopardy. I reserve my joinder relating to any implication the majority Opinion might assert that a murder charge filed in the *first* instance in juvenile court confers jurisdiction in juvenile court or creates a double jeopardy issue following adjudication. Just as in this case, the unlikely may occur if for no other reason than the greatly accelerated rate of homicides by juveniles in our metropolitan areas.

Jurisdiction over murder is exclusively in criminal court and it is only derivative in juvenile court as a result of the legislatively created transfer provisions. Transfer may or may not be interlocutory as detailed by the majority, and double jeopardy becomes an issue dependent upon the stage of the proceeding or the nature of the appeal.

(purpose of Juvenile Act); 42 Pa.C.S.A. § 6332 (detention hearing must be held within 72 hours); 42 Pa.C.S.A. § 6335 (adjudication hearing must be held within ten days of detention hearing); 42 Pa.C.S.A. § 6341 (dispositional hearing must be held within twenty days of adjudication hearing). However, when the Commonwealth appeals from the transfer order, any further proceedings under the Juvenile Act would be stayed pending the outcome of the appeal. Pa.R.App.P. 1701. Thus, in the case of a juvenile who is near the age of majority, by the time the Commonwealth has exhausted its appellate rights, the defendant may be over the age of twenty-one and thus not amenable for treatment under the Juvenile Act. See 42 Pa.C.S.A. § 6302 (definition of "child"). Moreover, even if the child is not twenty-one years of age, the passage of time may render it impossible to "rehabilitate the child prior to the expiration of the Juvenile Court jurisdiction." See 42 Pa.C.S.A. § 6355. Thus, if the transfer order is affirmed on appeal, upon remand, it is conceivable that the Commonwealth could request a new certification hearing to demonstrate that the defendant cannot be rehabilitated before his twenty-first birthday. See *Commonwealth v. Brown*, 485 Pa. 368, 402 A.2d 1007 (1979) (dicta indicating that new evidence may warrant reconsideration of transfer order). Thus, immediate appeal of this type of transfer order by the Commonwealth potentially could prejudice the defendant by eliminating his amenability to treatment as a juvenile.

If there is no inherent jurisdiction over murder in juvenile court, and it is derivative of exercise of initial jurisdiction in criminal court which must then relinquish jurisdiction by a transfer proceeding (aside from abuse of discretion by the presiding judge), the trial of a murder case in the first instance in juvenile court is a nullity. I believe this should be made clear because the majority spends time on discussing the nature of the unified judicial system and the co-equal authority of judges in each division, finding that divisions of the courts are administrative units and not jurisdictional dichotomies. In this unique and specific instance, murder jurisdiction is clearly and deliberately assigned in an absolute sense to the *adult* criminal system as opposed to the specially designed system for children. When it is transferred to juvenile court, a murder case is no longer tried as murder in the qualitative sense, but as a delinquent act subject to the procedural adjudicatory and dispositional alternatives available to children processed as delinquents. There is no parallel between the other divisions of the court in this respect. For example, a family court matter heard in the civil division would still be tried as a family matter with the same result. All of the procedural and evidentiary requirements for the type of case, regardless of which division hears the matters, must be applied, including pretrial, post-trial and appellate proceedings. A hearing on a murder charge in criminal court cannot be equated with a hearing on the identical charge in juvenile court.

I believe footnote 17 appropriately warns of the many obstacles faced by the courts and the legislature in effectively dealing with appeals such as presented here. It is also incumbent upon this Court to establish an accelerated process or emergency hearing procedure so that the issue, if presented again, may be resolved in a matter of days or weeks. This is not unheard of in that we are required to hear certain abortion matters forthwith because the essence of time requires it.

162

JOHNSON, Judge, concurring:

When Stephon Johnson was adjudicated delinquent, jeopardy attached. The Commonwealth now asks that we hold that the trial court erred when it transferred this case to the juvenile division so that they may *again* prosecute Johnson, this time in the criminal division. The double jeopardy clauses of the United States and Pennsylvania Constitutions protect against this. If the Commonwealth wished to question the trial court order transferring this matter, the proper time to do so was *before* Johnson was adjudicated delinquent and jeopardy attached. I must, therefore, agree that this appeal is untimely.

McEWEN, J., joins in this concurring statement.